Argued February 7; modified March 20, 1934

# FIRST NATIONAL BANK OF PORTLAND *v.* LABBE ET AL.

(30 P. (2d) 355)

*W. B. Layton* and *W. B. Winfree,* both of Portland (Edward A. Boyrie, Lester L. Ahlgrim, and Teal, Winfree, McCulloch & Shuler, all of Portland, on the brief), for appellants.

*V. V. Pendergrass,* of Portland (Pendergrass, Roehr & Zollinger, of Portland, on the brief), for respondent.

KELLY, J. At its inception, Labbe Brothers was a copartnership consisting of three brothers, Antoine, John and Blaise Labbe. They operated a grocery store and acquired several parcels of real property.

In 1904, Antoine Labbe died. The surviving brothers became owners of the property. In 1905, John Labbe died leaving a widow and four children. In 1907, Marguerite L. Labbe, one of John Labbe's children, died, leaving John Labbe's widow, and the three surviving children as her heirs. In 1913, Angeline M. Labbe, widow of John Labbe, died, whereby the three surviving children of John and Angeline M. Labbe became the owners of an undivided half of said properties. At that time, Blaise Labbe was the owner of the remaining undivided one-half thereof. In 1917, Blaise Labbe died testate bequeathing and devising his estate in equal shares to his son, Edward B. Labbe, and to his daughter-in-law, Emma, who was then the wife of said Edward B. Labbe, subject to the payment of a bequest of $1,000 to Pauline Labbe, the granddaughter of Blaise Labbe, and the daughter of said Edward B. and Emma Labbe. On December 1, 1927, Edward B. Labbe died leaving as his surviving heirs the said Emma Labbe, his widow, and the said Pauline Labbe, his daughter.

From the above statement it will be noted that from the death of Blaise Labbe an undivided one-half of the properties derived from the original partnership of Labbe Brothers was owned by the three sons of John Labbe, namely, Edmond J. Labbe, Antoine G. Labbe and C. Henri Labbe; and the other undivided one-half thereof was owned by Edward B. Labbe and Emma Labbe, who were the beneficiaries under the will of Blaise Labbe.

The notes in suit were signed Labbe Bros. by C. Henri Labbe. The collateral, which is the subject of the proposed foreclosure, was pledged by C. Henri Labbe to secure the notes in suit, and the crucial question herein is whether expressly or by implication defendants, Emma Labbe and Pauline Labbe, or either of them, authorized said C. Henri Labbe to execute said note and pledge said collateral in their behalf or in behalf of either of them.

The record discloses that in the matter of the estate of Blaise Labbe, deceased, an inventory and appraisement of the property of said estate was filed on October 12, 1917. It is known to this record as exhibit 57D. It sets forth "a summary of the firm's business as of August 12th 1917," and lists various stocks belonging to the firm of Labbe Brothers.

The final account therein was filed on May 8, 1918. It is known to this record as exhibit 57E. The following statement is contained therein:

"That said estate was wholly solvent. There were no large claims outstanding except the claim of Labbe Bros., which at the time of the death of said Blaise Labbe amounted to $3,112.73. Blaise Labbe in his lifetime held certain properties in common with E. J. Labbe, C. H. Labbe and A. G. Labbe. The property so held and the business connected therewith was carried on under the name of Labbe Bros. The members of the

firm square off their accounts at the end of each year and the above claim of $3,112.73 represents Blaise Labbe's indebtedness to the firm at the time of his death. It has been squared off and settled. * * * Whatever debts were owing by the firm of Labbe Bros. at the time of the death of said Blaise Labbe have been assumed by the said Edward B. Labbe and Emma Labbe who succeed to the interest of the said Blaise Labbe in the firm of Labbe Bros.''

This final account is signed and verified by Edward B. Labbe and Emma Labbe, as executor and executrix, respectively.

We find nothing in the record indicating that Emma Labbe withdrew from said firm of Labbe Brothers.

From that time, namely the entry into the firm by Edward B. and Emma Labbe, sometime in May, 1918, until the death of Edward B. Labbe on December 1, 1927, more than nine years, C. Henri Labbe, managed the properties, borrowed money at the bank, made investments in stocks, bonds and other securities and was in continuous correspondence with Edward B. Labbe. The character of this correspondence is such as to convince us that Emma Labbe was apprised of the course so taken by C. Henri Labbe and approved it. There is nothing in the record challenging the statement that Emma Labbe and her husband succeeded to the interest of said Blaise Labbe in said firm of Labbe Brothers. Such being the case, the statements of her associate therein are competent evidence generally. *Belt v. McGehee,* 9 S. W. (2d) 407, and authorities there cited. These repeatedly reflect a continuing knowledge on Emma Labbe's part of the details directly reported by C. Henri Labbe to Edward B. Labbe.

On the 15th day of December, 1927, C. Henri Labbe wrote a letter to Mrs. Emma Labbe, addressing her at St. Louis, Missouri, which letter contained the following statement:

"I am sending you inclosed a check for $500.00 and will send the balance in the future so that you may have it in a separate fund if that is your desire. We have notes at the bank and it would have been necessary for me to have borrowed more money to pay the full amount."

On December 22, 1927, a telegram acknowledged receipt of this letter and check. There is nothing in the record tending to question the receipt of said letter by Mrs. Emma Labbe.

From 1927 to 1929 Emma Labbe received remittances of approximately $800 per month from Labbe Brothers transmitted by C. Henri Labbe. A number of cancelled checks drawn upon the plaintiff bank to the order of Emma Labbe and signed Labbe Bros. by C. Henri Labbe are in evidence. These bear the endorsement Mrs. Emma Labbe. We are not unmindful that the record discloses that C. Henri Labbe carried his personal funds and the funds, or at least some of them coming into his hands in his practice of the law, in the account of Labbe Brothers at plaintiff's bank. We do not forget that both Mrs. Emma Labbe and Pauline Labbe declined to execute a power of attorney expressly granting to C. Henri Labbe the authority to execute notes and mortgages and pledge securities in their behalf; but executed only a more restricted power of attorney wherefrom the above mentioned authorization was omitted.

If only the existence of a partnership and the death of one of the partners were shown, we would not be justified in holding that after such death the surviving

members of the firm continued to be bound reciprocally by the action of one of them in making new contracts and incurring additional indebtedness; but here we have a long course of repeatedly continuing the firm after the death of one of its members by the tacit, if not expressed, consent of the survivors and the heirs of the deceased member. This was done when John Labbe died, also when Antoine Labbe died, and also when Blaise Labbe died. When Blaise Labbe died, Emma Labbe expressly consented to such a course. After Mr. Edward B. Labbe passed away, Mrs. Emma Labbe did nothing and said nothing which would indicate that such a course should not again be taken. On the contrary, she received remittance after remittance and letter after letter from which no other conclusion could be drawn than that the firm of Labbe Brothers was continuing as before with Mr. C. Henri Labbe exercising the same authority as formerly.

██ As to Miss Pauline Labbe, the record discloses that she accepted a note for $1,000 from Labbe Brothers, being the amount of the bequest to her by her grandfather Blaise Labbe. There is no acknowledgment by her of any relationship to the firm of Labbe Brothers, other than as a creditor. Interest was paid to her on said note. She was living with her mother during the time that remittances were made by C. Henri Labbe to her mother, but the record is silent as to any actual knowledge on her part of the manner in which the affairs of Labbe Bros. were being conducted.

The telegram of December 22, 1927, above referred to, was signed "Emma and Pauline". The record is silent as to who signed it. It is suggested that the failure of her mother and herself to testify should be considered in determining whether their authorization of C. Henri Labbe to execute the notes in suit had been

approved. In the case of Mrs. Emma Labbe, where, as stated, there is affirmative evidence tending to prove such authorization, we think the effect of such failure to testify is a tacit admission of the facts shown by such affirmative evidence. In the case of Miss Pauline Labbe, however, we find no affirmative evidence of that kind, and hence no duty devolved upon her to testify in denial or explanation thereof. -

We conclude that Mrs. Emma Labbe authorized defendant C. Henri Labbe to bind her as one of the firm of Labbe Brothers by borrowing the money, pledging the collateral, and executing the notes in suit.

We think, however, that there is no evidence in the record that Miss Pauline Labbe gave such authority to defendant C. Henri Labbe.

It is therefore ordered that as to defendant, Mrs. Emma Labbe, the decree of the circuit court be and the same is affirmed; and as to defendant, Miss Pauline Labbe, it is ordered that said decree be and the same is reversed and this cause dismissed.

It is further ordered that neither party to this appeal recover costs or disbursements from the other.

CAMPBELL, J., not sitting.