No. 02-509

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 70

GLACIER TENNIS CLUB AT THE SUMMIT, LLC,

Plaintiff, Respondent, and Cross-Appellant,

v.

TREWEEK CONSTRUCTION COMPANY, INC.,

Defendant and Appellant.

TREWEEK CONSTRUCTION COMPANY, INC.,

Third-Party Plaintiff and Appellant,

v.

NUPAC/PACK AND COMPANY, a Montana Corporation;
LYNDON STEINMETZ, d/b/a LYNDON STEINMETZ
DRAFTING AND DESIGN, a Sole Proprietorship; JIM
THOMPSON d/b/a ARQUITECTNOS, a Sole Proprietorship,

Third-Party Defendants and Respondents.

APPEAL FROM:     District Court of the Eleventh Judicial District,
                 In and For the County of Flathead, Cause No. DV 2000-433(B),
                 Honorable Stewart E. Stadler, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                Robert H. Phillips & Fred Simpson, Phillips & Bohyer, Missoula, Montana

For Respondents:

 Joe Bottomly, Sean Hinchey and Amy Eddy, Bottomly Law Offices,
Kalispell, Montana (Glacier Tennis Club)

 Bruce A. Fredrickson and Kimberly S. More, Crowley, Haughey, Hanson
Toole & Dietrich, P.L.L.P., Kalispell, Montana (Nupac/Pack)

 Jeffrey D. Ellingson, Ellingson Law Offices, Kalispell, Montana (Thompson)

 Michael A. Ferrington, Attorney at Law, Whitefish, Montana (Steinmetz)

Submitted on Briefs: February 13, 2003

Decided: March 23, 2004

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Glacier Tennis Club at the Summit, LLC (GTC) brought this action against Treweek Construction, Inc. (Treweek), in the District Court of the Eleventh Judicial District, Flathead County, claiming damages for various design and construction defects in its tennis facility. In response, Treweek filed a third-party claim against the project architect, Jim Thompson, d/b/a/Arquitectnos (Thompson), alleging that Thompson was negligent in his preparation and review of plans for the construction of the tennis facility. Treweek also filed third-party claims against various subcontractors, including, Nupac/Pack and Company (Nupac), Lyndon Steinmetz, d/b/a Lyndon Steinmetz Drafting and Design (Steinmetz), and Steve Seitz, d/b/a/Seitz Engineering (Seitz), seeking indemnity. The District Court entered summary judgment in favor of Thompson, Nupac, and Steinmetz, dismissing them from the lawsuit, and Treweek settled its claim with Seitz shortly before trial. A jury trial was thereafter held on GTC's claims against Treweek for negligence and breach of contract, resulting in an $85,000 verdict in favor of GTC. Treweek appeals and GTC cross-appeals on the issue of prejudgment interest. We affirm.

¶2     The following issues are raised on appeal:

¶3     1. Did the District Court err in granting summary judgment in favor of Third-Party Defendant, Jim Thompson?

¶4     2. Did the District Court err in granting summary judgment in favor of Third-Party Defendant, Nupac?

4

¶5    3. Did the District Court err in denying Treweek's motion for judgment as a matter of law regarding GTC's claim for radon remediation damages?

¶6    4. Did the District Court err in excluding evidence that GTC had rejected an underslab drain tile system?

¶7    5. Did the District Court err in admitting evidence of engineering fees reasonably incurred to evaluate and remedy Treweek's work?

¶8    6. Did the District Court err in denying GTC's request for prejudgment interest?

## FACTUAL AND PROCEDURAL BACKGROUND

¶9    This litigation arises out of the design and construction of a four court indoor tennis facility for GTC, a limited liability corporation owned by Northwest Healthcare Corporation and approximately thirty families interested in promoting tennis. Prior to soliciting bids for construction of the facility, GTC retained the services of Jim Thompson, an architect, to provide preliminary design parameters and building specifications of the tennis facility. Thompson also assisted GTC in obtaining permits and evaluating bid proposals, among other duties.

¶10    Based upon the schematic drawings prepared by Thompson, Treweek submitted a bid to GTC for the design and construction of the tennis facility in June 1997. At the request of one of the GTC board members, Treweek additionally quoted the cost of installing an underslab drain tile system within the facility, but the quote was not part of Treweek's original bid proposal, and was not adopted by GTC. Shortly after submitting its bid, Treweek was awarded the contract to design and construct the tennis facility. Treweek

5

commenced construction of the facility early that fall, using subcontractors to complete various aspects of the project. Among those hired to perform the work was Nupac, a construction company who primarily prepared the ground surface and laid asphalt for the tennis courts. Treweek also hired Steinmetz and Seitz, who provided drafting and design services, respectively.

¶11 The facility was completed in the early part of 1998. However, shortly thereafter, GTC began experiencing problems with the building. In particular, GTC representatives reported a "bulge" in the surface playing area of one of the tennis courts, which caused tennis players to occasionally stumble. They also noticed water seeping into the building from the exterior walls–many of which are below ground–whenever the exterior ground became saturated with moisture.

¶12 In response to these concerns, several meetings were held between representatives of GTC, Treweek, and the subcontractors. While the parties disagreed as to the cause of the bulge, they generally agreed that its existence was due to error.

¶13 Treweek also recognized GTC's concerns with the draining system and acknowledged that water should not be leaking into the building. In an effort to remedy this problem, Treweek patched the interior walls several times. However, the leaking continued despite their efforts. After nearly two years without a remedy, GTC retained the services of Jay Billmayer (Billmayer), an engineer, to investigate the problem. Billmayer determined the building was leaking due to a poor subsurface drainage design as well as defective

6

workmanship in the drainage system, including crushed drain pipes, squashed outlet openings, and unsuitable backfill material.

¶14    Billmayer also discovered that a vapor barrier had not been installed beneath the facility.  The lack of a vapor barrier raised concerns about the presence of radon, since vapor barriers have a secondary benefit of preventing gas from rising to the surface.  As a result of this concern, Billmayer and GTC performed radon tests in the facility which revealed that radon levels were in excess of acceptable limits.  Billmayer estimated the cost to remediate the presence of radon was significant.  However, Treweek responded that radon remediation was neither contemplated by the parties at the time of contracting, nor required by the standard of care at the time of the project.

¶15    On August 18, 2000, GTC brought suit against Treweek, claiming that it was negligent and had breached its contract.  In response, Treweek admitted the problems associated with the bulge in the tennis court and leaking water, but denied that such problems were caused by its negligence or breach.  Treweek thereafter brought third-party claims against Jim Thompson, Nupac, Steinmetz, and Seitz, alleging that Thompson had been negligent in his preparation, review, and approval of the construction plans, and that Nupac, Steinmetz, and Seitz had failed to perform their subcontracts in a good and workmanlike fashion and had breached their contracts with Treweek.  Treweek sought indemnification from its third-party defendants for any claim upon which GTC prevailed.

¶16    In response to Treweek's third-party claims, Nupac, Steinmetz, and Thompson filed motions for summary judgment, each seeking to be dismissed from the lawsuit on the basis

7

that no genuine issues of material fact existed as to their alleged negligence or alleged failure to perform the work according to contract. Following oral arguments, the District Court concluded that Treweek had failed to bring forth evidence establishing issues of material fact as to the third-party defendants' liability, and granted summary judgment in favor of each of them.

¶17 GTC requested summary judgment as to the issue of its comparative negligence, which Treweek had counterclaimed in response to GTC's first amended complaint. According to Treweek, GTC was comparatively negligent by virtue of its affiliation with Jim Thompson who, Treweek maintained, negligently failed to identify any errors or deficiencies in the plans submitted for his review. The District Court rejected Treweek's contentions, finding no evidence that Thompson was GTC's agent for any part of the project beyond providing preliminary specifications, and awarded summary judgment in favor of GTC on Treweek's counterclaim.

¶18 The matter proceeded to trial between GTC and Treweek on April 15, 2002.[1] Following GTC's case-in-chief, Treweek moved for a directed verdict regarding damages for the increased costs of radon remediation allegedly caused by its failure to place a vapor barrier and proper subsurface gravel beneath the tennis facility. This motion was denied.

¶19 On April 19, 2002, the jury returned a verdict in favor of GTC in the amount of $85,000. The District Court entered judgment on the verdict on April 23, 2002, and GTC

---

[1]Seitz resolved his dispute with Treweek shortly before trial and is not a party on appeal.

8

subsequently filed a motion seeking prejudgment interest. The District Court denied GTC's motion, concluding that the amount of damages was incapable of being ascertained prior to trial. Treweek appeals from the April 23, 2002 judgment and GTC cross-appeals from the District Court's denial of prejudgment interest.

## DISCUSSION

¶20 **Did the District Court err in granting summary judgment in favor of Third-Party Defendant, Jim Thompson?**

¶21 We review a district court's grant of summary judgment *de novo*, applying the same evaluation under Rule 56, M.R.Civ.P., as the district court. *Bos v. Gallatin County*, 2003 MT 162, ¶ 8, 316 Mont. 292, ¶ 8, 71 P.3d 1209, ¶ 8. That is,

> The party moving for summary judgment has the initial burden of proving that there are no genuine issues of material fact that would permit a non-moving party to succeed on the merits of the case. . . . If the moving party meets this burden, then the non-moving party must provide substantial evidence that raises a genuine issue of material fact, to avoid summary judgment in favor of the moving party. . . . "Material issues of fact are identified by looking to the substantive law which governs the claim."

*Babcock Place P'ship v. Berg, Lilly, Andriolo & Tollefsen, P.C.*, 2003 MT 111, ¶ 15, 315 Mont. 364, ¶ 15, 69 P.3d 1145, ¶ 15 (citations omitted). Once it is established that no genuine issues of material fact exist, the court then must determine whether the moving party is entitled to judgment as a matter of law. *Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264-65, 900 P.2d 901, 903. We review the legal determinations made by a district court to determine whether the court erred. *Bruner*, 272 Mont. at 265, 900 P.2d at 903.

9

¶22	The underlying premise of Treweek's claim against Thompson is that Thompson was negligent in his preparation of plans for construction of the facility and/or his review and approval of plans and designs submitted for his review. Thompson denies that he owed any duty of care to Treweek, contractually or otherwise, and maintains that Treweek was unjustified in relying upon him as the project architect.

¶23	The District Court, relying upon our holding in *Jim's Excavating Service, Inc. v. HKM Associates* (1994), 265 Mont. 494, 878 P.2d 248, held that Thompson could not be held liable for negligence because Treweek had failed to establish that Thompson owed it a duty of care. *Jim's Excavating* involved a claim by a third-party contractor against a project engineer, HKM, for economic damages. HKM argued that there could be no tort liability because there was no privity between HKM and the contractor, particularly since the negligence complained of (preparation of plans and specifications) occurred before HKM actually knew the contractor would be part of the project. *Jim's Excavating*, 265 Mont. at 501, 878 P.2d at 252. We rejected HKM's contentions that it could not be liable because it did not know the contractor would receive the bid. Applying § 552 of the Restatement (Second) of Torts, we held that a third-party contractor may successfully recover for economic loss against a project engineer or architect when the design professional knew or should have foreseen that the particular plaintiff or an identifiable class of plaintiffs were at risk in relying on the information supplied. *Jim's Excavating*, 265 Mont. at 506, 878 P.2d at 255. We additionally concluded that when a contractor brings suit against the project engineer or architect, the approach set forth in § 552 of the Restatement should control.

10

*Jim's Excavating*, 265 Mont. at 504-05, 878 P.2d at 254. Section 552 of the Restatement provides:

> (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
> (2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
> (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
> (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.
> (3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

Applying § 552 and the holding of *Jim's Excavating* to this case, Thompson may be held to a duty of care only if he communicated professional information to Treweek with the intention or knowledge that such information would be relied upon by Treweek, or a party similarly situated. Absent a duty, no breach of duty can be established and no negligence action can be maintained. *Debcon*, *Inc. v. City of Glasgow*, 2001 MT 124, ¶ 29, 305 Mont. 391, ¶ 29, 28 P.3d 478, ¶ 29.

¶24 In support of his motion for summary judgment, Thompson offered evidence that his responsibilities for the design of the tennis facility were limited to preparing an initial site plan, which was used to solicit bids for "design and build" services. Based upon

Thompson's preliminary specifications, Treweek submitted a bid for the design and construction of the facility and received the contract. The parties agreed, however, that Thompson had no contractual relationship with Treweek.

¶25 After commencing construction of the facility, Thompson periodically reviewed Treweek's plans and progress for GTC to confirm that Treweek was entitled to receive progress payments. According to Thompson, he had no involvement in the design of the drainage system, which contributed to the leaking water problem. Thompson also maintained that he never intended, knew, or reasonably should have known that Treweek was relying upon him for assistance in the design and construction of the facility.

¶26 In response, Treweek offered evidence of Thompson's continuing involvement in the project, including attendance at board meetings, and his monitoring of the project's progress and quality of work. Essentially, Treweek maintained that Thompson's continuing involvement in the project made it reasonable for Treweek to believe that Thompson was reviewing and approving its plans and designs, and would notify Treweek of any potential defects. Treweek claimed Thompson breached his duty of care by failing to properly advise it of such defects.

¶27 Upon our review of the record, we conclude the District Court was correct in deciding that Thompson owed no duty of care to Treweek. Treweek admittedly had not contracted for Thompson's services as a project architect and there was no evidence that Thompson offered any guidance to Treweek in this regard. Although the parties agreed that Thompson periodically reviewed Treweek's progress, any certification by Thompson was done for

12

purposes of making interim payments, and was made to GTC, not Treweek. Assuming arguendo that Treweek provided all elements of the design to Thompson for his review and approval, there remains to be seen any evidence that Thompson actually communicated professional information to Treweek, much less evidence of intention or knowledge that such information would be relied upon by Treweek.

¶28 Because Treweek failed to offer any evidence showing that Thompson communicated professional information to Treweek with the intention or knowledge that such information would be relied upon by Treweek, and no contractual relationship existed, there is no duty of care. Absent a duty, there can be no breach, and Treweek's negligence claim fails as a matter of law. Accordingly, summary judgment in favor of Thompson was proper.

¶29 **Did the District Court err in granting summary judgment in favor of Third-Party Defendant, Nupac?**

¶30 As a threshold matter, Nupac challenges Treweek's notice of appeal as deficient, and argues that this Court lacks jurisdiction to determine whether summary judgment in favor of Nupac was proper because Treweek failed to designate in its notice of appeal that it was appealing from the District Court's order granting summary judgment to the third-party defendants. In support of its argument, Nupac relies upon Rule 4(c), M.R.App.P., which, at the time of this appeal,[2] provided as follows:

---

[2]On October 23, 2003, we amended Rule 4(c), M.R.App.P., to provide as follows:
Content and notice of appeal. The notice of appeal shall specify the party or parties taking the appeal; and shall designate the judgment, or order appealed from. *An appeal from a judgment draws into question all previous orders and rulings excepted or objected to and which led up to and produced the judgment.* [Emphasis added.]

13

Content of the notice of appeal. The notice of appeal shall specify the party or parties taking the appeal; and shall designate the judgment, order or part thereof appealed from.

¶31 As Nupac correctly notes, in applying Rule 4(c), M.R.App.P., we have consistently held that "we will not consider an appeal from an order not designated in the notice of appeal." *Lewis v. Puget Sound Power & Light Co.*, 2001 MT 145, ¶ 27, 306 Mont. 37, ¶ 27, 29 P.3d 1028, ¶ 27; *see also State v. Delap* (1989), 237 Mont. 346, 350-51, 772 P.2d 1268, 1271. However, we have also recognized that "non-appealable intermediate orders or decisions properly excepted or objected to which involve the merits or necessarily affect the judgment are reviewable on appeal from a final judgment." *Ruana v. Grigonis* (1996), 275 Mont. 441, 452, 913 P.2d 1247, 1254.

¶32 Here, Treweek seeks review of an order granting summary judgment. As a general rule, summary judgment orders are interlocutory, and therefore not appealable until the final judgment is rendered. *Trombley v. Mann*, 2001 MT 154, ¶ 7, 306 Mont. 80, ¶ 7, 30 P.2d 355, ¶ 7, citing *Cechovic v. Hardin & Assoc., Inc.* (1995), 273 Mont. 104, 118, 902 P.2d 520, 528. Pursuant to Rule 2(a), M.R.App.P., this Court may review "the verdict or decision, *and any intermediate order or decision* excepted or objected to within the meaning of Rule 46 of the Montana Rules of Civil Procedure, which involves the merits, or necessarily affects the judgment, except a decision or order from which an appeal might have been taken." (Emphasis added.) Here, the District Court's order granting summary judgment in favor of Nupac preceded, and necessarily affected, the final–and appealable–judgment entered in

14

favor of GTC. Because Treweek's objection to the motion was also preserved, the District Court's order granting summary judgment in favor of Nupac is reviewable on appeal.

¶33 Turning to the issue on appeal, Treweek maintains the District Court erred in awarding summary judgment in favor of Nupac because genuine issues of material fact existed with regard to the cause of the bulge in the tennis court, as well as Nupac's alleged failure to perform the work according to contract. Pursuant to its contract with Treweek, Nupac agreed to indemnify Treweek against all damages arising out of its work, and further agreed to perform "all work in a first-class and workmanlike manner and to the entire satisfaction of the Owner, Contractor, and Architect." Treweek asserts that Nupac's failure to so perform constitutes negligence and a breach of its contract. Nupac responds that summary judgment was appropriate due to Treweek's failure to establish a prima facie case of negligence.

¶34 We have held that to survive a motion for summary judgment in a negligence action, a plaintiff must raise genuine issues of material fact with regard to a legal duty on the part of the defendant, a breach of that duty, causation, and damages. *Butler v. Domin*, 2000 MT 312, ¶ 21, 302 Mont. 452, ¶ 21, 15 P.3d 1189, ¶ 21. If a party seeking summary judgment establishes the absence of a genuine issue of material fact as to any one of the elements constituting the cause of action, and the opposing party fails to come forward with proof establishing the existence of a genuine issue as to that element, summary judgment is proper. *Debcon,* ¶ 21. As in the previous issue, our standard of review of a district court's grant of summary judgment is *de novo*, and we use the same standards as used by the district court:

15

first whether issues of material fact exist, and, if not, whether the moving party is entitled to judgment as a matter of law. Rule 56, M.R.Civ.P.; *Abraham v. Nelson*, 2002 MT 94, ¶ 9, 309 Mont. 366, ¶ 9, 46 P.3d 628, ¶ 9.

¶35 Upon review of the record, we conclude the District Court correctly granted summary judgment in favor of Nupac. In support of its motion, Nupac offered deposition testimony from Treweek's project coordinator, Tony Haverkorn (Haverkorn), who confirmed that Nupac's work was tested by Treweek's engineers prior to paving, and was found to meet or exceed design strength requirements. Haverkorn further testified that after Nupac finished paving, Treweek's representatives inspected Nupac's work, and found that no problem existed with regard to the asphalt, and issued payment. By presenting Haverkorn's testimony that no problem existed with regard to the asphalt at the time of payment, Nupac successfully satisfied its burden as the moving party. It then became incumbent upon Treweek to establish a disputed issue of material fact as to Nupac's alleged negligence and failure to perform in a workmanlike manner.

¶36 However, Treweek's only evidence in response to Nupac's motion came from Richard Thompson (Richard), who applied the tennis court surfacing material over the asphalt. Richard testified that he noticed a bulge in one of the tennis courts prior to surfacing, but did not view the irregularity as a major concern, and nonetheless proceeded with surfacing. In Richard's opinion, the bulge was the result of too much asphalt being placed at the paving seam. However, Richard admittedly had no experience laying asphalt, and conceded that other causes, such as a frost heave or subsurface water seepage, might have been responsible

16

for the bulge. Moreover, Richard made no bore holes in the asphalt to objectively determine whether there was, in fact, an area where there might be too much asphalt.

¶37 It is well established that "a suspicion, regardless of how particularized, is insufficient to sustain an action or defeat a motion for summary judgment," and that "unsupported, conclusory, or speculative statements do not raise a genuine issue of material fact." *Abraham*, ¶ 26. In this case, Richard's testimony was insufficient to create a genuine issue of material fact as to the cause of the purported bulge in the tennis court. Therefore, implicating Nupac's work as the cause of the defect required speculation. Causation being a material element in sustaining a cause of action for negligence or breach, we conclude that summary judgment in Nupac's favor was appropriate.

¶38 **Did the District Court err in denying Treweek's motion for judgment as a matter of law regarding GTC's claim for radon remediation damages?**

¶39 Treweek contends that the issue of radon remediation should not have been submitted to the jury because neither the contract with GTC, nor the Uniform Building Code (UBC) provision requiring installation of a subsurface vapor barrier, contemplated radon remediation. In response, GTC maintains that Treweek was obligated to install a subsurface vapor barrier under both the UBC and its construction contract with GTC, and that the need for radon remediation was simply the foreseeable consequence of Treweek's failure to satisfy this duty.

¶40 Considering all evidence in the light most favorable to the opposing party, judgment as a matter of law is properly granted only when there is a *complete absence* of any evidence

17

which would justify submitting an issue to the jury. *Armstrong v. Gondeiro*, 2000 MT 326, ¶ 26, 303 Mont. 37, ¶ 26, 15 P.3d 386, ¶ 26. "If there is *any evidence* in support of the verdict and if the party opposing the motion can recover on *any* view of the evidence and legitimate inferences, then the court must exercise self-restraint, credit the constitutionally mandated process of jury decision, and deny the motion." *Sandman v. Farmers Ins. Exchange*, 1998 MT 286, ¶ 46, 291 Mont. 456, ¶ 46, 969 P.2d 277, ¶ 46. We review a district court's decision regarding a motion for judgment as a matter of law to determine whether the district court abused its discretion. *Onstad v. Payless Shoesource*, 2000 MT 230, ¶ 25, 301 Mont. 259, ¶ 25, 9 P.3d 38, ¶ 25.

¶41 At trial, Treweek's owner and project coordinator each conceded that Treweek was obligated by contract to comply with all applicable uniform building codes. According to the uncontradicted testimony of Jay Billmayer, GTC's expert witness, at the time of constructing the tennis facility, the UBC required installation of a vapor barrier as well as a layer of properly sized gravel beneath the flooring system. Due to the lack of a subsurface vapor barrier and a properly sized gravel base, GTC experienced increased levels of radon within its facility.

¶42 On these facts alone, we conclude the District Court was correct to submit the question of Treweek's liability for radon remediation to the jury. GTC presented sufficient evidence to raise an inference that Treweek owed a contractual duty to adhere to the UBC and breached that duty by failing to install a subsurface vapor barrier and properly sized

18

gravel base, which resulted in damages. Accordingly, we hold the District Court did not abuse its discretion in denying Treweek's motion for judgment as a matter of law.

¶43 **Did the District Court err in excluding evidence that GTC had rejected an underslab drain tile system?**

¶44 Shortly after submitting its original bid to GTC for the design and construction of the tennis facility, one of the GTC board members requested a price quote on the installation of an underslab drain tile system. In response, Treweek submitted an attachment to its original bid proposal, detailing the cost of several options, including the requested quote for a drain tile system. GTC did not adopt the quote and awarded Treweek the contract based upon the original bid proposal.

¶45 At trial, the District Court granted GTC's motion to exclude evidence that Treweek had offered to install an underslab drain tile system, and that GTC had rejected such option on the basis of cost. In its subsequent offer of proof, Treweek maintained that the proposed subsurface drainage system would have solved any moisture problems, if any existed, and might also have satisfied the UBC requirements for a vapor barrier, as well as constituted radon remediation.

¶46 On appeal, Treweek argues the District Court erred in excluding evidence of its proposal. Treweek contends that its proffered evidence was relevant for purposes of responding to Billmayer's testimony that remediating the radon problem required a "manifold," or underslab set of pipes, which would help vent the radon out of the facility. According to Treweek, the court's ruling effectively prevented it from arguing to the jury that

GTC had explicitly rejected a design component which would have helped reduce the presence of radon in the facility. Treweek contends that it was prejudiced as a result.

¶47     We review a district court's evidentiary rulings for abuse of discretion. *Englin v. Board of County Commissioners*, 2002 MT 115, ¶ 38, 310 Mont. 1, ¶ 38, 48 P.3d 39, ¶ 38. A district court has broad discretion in determining whether evidence is relevant and admissible, and we will not overturn its determination absent an abuse of that discretion. *Somont Oil Co., Inc. v. A & G Drilling, Inc.*, 2002 MT 141, ¶ 20, 310 Mont. 221, ¶ 20, 49 P.3d 598, ¶ 20.  Furthermore, the question is not whether this Court would have reached the same decision, but, whether the district court abused its discretion in reaching the decision to deny admissibility.  *Simmons Oil Corp. v. Wells Fargo Bank, N.A.*, 1998 MT 129, ¶ 17, 289 Mont. 119, ¶ 17, 960 P.2d 291, ¶ 17.

¶48     Relevant evidence is defined at Rule 401, M.R.Evid., as that ". . . having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  *Christofferson v. City of Great Falls*, 2003 MT 189, ¶ 34, 316 Mont. 469, ¶ 34, 74 P.3d 1021, ¶ 34.  In this case, evidence that GTC rejected a proposal for radon remediation would have been relevant only to Treweek's counterclaim against GTC for comparative negligence.  However, in an order dated April 2, 2002, the District Court granted GTC's motion for summary judgment as to the issue of its comparative negligence, and Treweek has not taken issue with this ruling on appeal.  Given the dismissal of Treweek's counterclaim, and the fact that Treweek had not recommended the drainage system to GTC, but had only provided a price quote for the

20

system in response to a request from a GTC board member, we cannot conclude the District Court abused its discretion in excluding this evidence at trial.

¶49 **Did the District Court err in admitting evidence of engineering fees reasonably incurred to evaluate and remedy Treweek's work?**

¶50 Prior to trial, Treweek moved in limine for an order excluding evidence of the amount GTC paid its expert witness, Jay Billmayer, for his consulting work in relation to the case. The court did not immediately rule on Treweek's motion. However, at trial, the court admitted Billmayer's invoices into evidence over Treweek's objection. GTC's manager, Brad Roy, thereafter testified that GTC paid Billmayer in excess of $15,000 to assess the problems with the tennis facility and propose a solution.

¶51 Treweek argues that the District Court erred in allowing GTC to introduce evidence of Billmayer's fees because under § 26-2-505, MCA, expert witness fees are limited to the amount paid other witnesses, or $10 per day. This is true notwithstanding the fact that the actual fees may be higher. In response, GTC contends that Billmayer's fees are not witness fees, subject to the statutory per diem, but damages incurred in an effort to remediate the facility.

¶52 A district court's ruling on a motion in limine is an evidentiary ruling. *Somont Oil*, ¶ 20. As we stated in the previous issue, a district court has broad discretion in determining whether evidence is relevant and admissible, and we will not overturn its determination absent an abuse of discretion. *Spinler v. Allen*, 1999 MT 160, ¶ 29, 295 Mont. 139, ¶ 29, 983 P.2d 348, ¶ 29.

21

¶53 From our review of the record, we conclude that Billmayer's fees were properly submitted to the jury as part of GTC's damage claim. The relevant measure of damages for injuries to real property is the cost of repair, plus damages for loss of use up to the time when the damage reasonably could have been repaired. *See Burk Ranches, Inc. v. State* (1990), 242 Mont. 300, 307, 790 P.2d 443, 447. Here, the fees submitted for the jury's review were incurred prior to the commencement of litigation and reflected Billmayer's time spent investigating the cause of the construction defects and preparing a proposal for radon remediation. Billmayer's fees were relevant to the measure of damages because his services were necessary to ascertain the cause of the water leaking within the facility, as well as to formulate a plan for radon remediation. The invoice submitted to the jury did not reflect Billmayer's time expended for trial preparation or testimony and there is no indication that Billmayer was retained solely for litigation purposes. Accordingly, we hold the District Court did not abuse its discretion in admitting this evidence.

¶54 **Did the District Court err in denying GTC's request for prejudgment interest?**

¶55 A district court's award of prejudgment interest is a question of law, and therefore, we examine whether the court was correct in its application of the law. *Semenza v. Bowman* (1994), 268 Mont. 118, 127, 885 P.2d 451, 456.

¶56 On cross-appeal, GTC maintains that the District Court erred in denying its motion for prejudgment interest by misinterpreting § 27-1-210(1), MCA, which allows the payment of prejudgment interest on certain tort claims. Section 27-1-210, MCA, provides:

22

> **Interest on torts.** (1) Subject to subsection (2), in an action for recovery on an injury as defined in 27-1-106, a prevailing claimant is entitled to interest at a rate of 10% on any claim for damages awarded that are capable of being made certain by calculation, beginning from the date 30 days after the claimant presented a written statement to the opposing party or his agent stating the claim and how the specific sum was calculated.

According to the statute, prejudgment interest is only allowed for claims which are "capable of being made certain by calculation." Furthermore, this Court has consistently held that prejudgment interest is inappropriate when the amount of a party's damages is uncertain or disputed. *Northern Mont. Hosp. v. Knight* (1991), 248 Mont. 310, 320-21, 811 P.2d 1276, 1282; *see also Morning Star Enter., Inc. v. R.H. Grover, Inc*. (1991), 247 Mont. 105, 116, 805 P.2d 553, 559 (involving damages for failing to perform a construction contract in a workmanlike manner); *Heitz v. Heitz* (1990), 244 Mont. 12, 15-16, 795 P.2d 486, 489 (damages for breach of an oral rental contract); *McPherson v. Schlemmer* (1988), 230 Mont. 81, 87, 749 P.2d 51, 54 (damages for negligence). In each of these cases, uncertain damages precluded an award of prejudgment interest.

¶57 Determining whether or not the amount of a particular claim was ascertainable in advance of trial may often prove a difficult task. However, we find guidance in the following excerpt discussing prejudgment interest in the context of a builder's recovery in an action for breach of a construction contract:

> [I]t may perhaps be said, as a broad generalization from the various cases, that the amount of a builder's claim will ordinarily be deemed capable of ascertainment when there is some standard or measure of compensation fixed in the contract itself, and only the amount of labor performed or the quantity of materials furnished is at issue between the parties, or where market values, upon which it would be possible to base a reasonably accurate computation,

23

are well known and established and not a matter of real dispute. Conversely, and again speaking in broad terms, it would seem fair to conclude that where no standards of calculation or computation are fixed in the contract itself, and applicable market values or other factors affecting the amount owing to the builder can only be established by judicial determination upon consideration of conflicting evidence, or where the builder's claim or some substantial part thereof includes prospective or contingent damages, then the amount of such claim will be deemed incapable of ascertainment.

J.R. Kemper, LL.B., *Allowance of Prejudgment Interest on Builder's Recovery in Action for Breach of Construction Contract*, 60 A.L.R.3d 487, 514-15 (1974).

¶58    In this case, much evidence was presented at trial concerning Treweek's general liability for defective construction of the tennis facility. However, the only evidence of costs for remediating the facility was a proposal prepared by Billmayer, which Treweek disputed. Since no standards of computation or calculation were fixed in the parties' contract, any determination of the amount owed to GTC necessarily would have depended upon a judicial determination after consideration of conflicting evidence.

¶59    We also note that there was a considerable difference between the amount of damages claimed by GTC at trial, approximately $170,500, and the amount ultimately awarded by the jury, $85,000. We have held that when a claimant alleges an award which is substantially different from the amount ultimately awarded by the trial court, the damages are not capable of being made certain by calculation. *Jim's Excavating*, 265 Mont. at 516, 878 P.2d at 261. Here, the District Court concluded that the damages were incapable of being ascertained prior to trial, and based upon our review of the record, we cannot conclude otherwise.

24

¶60    Affirmed.

                                        /S/ JIM RICE

We concur:


/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER
/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART