NATIONAL GRANGE MUTUAL INSURANCE COMPANY, Appellant

v.

Cynthia WHITE, Individually, as Administratrix of the Estate of Daniel Earl White, Deceased, as Parent, Guardian and Next Friend of Joshua White, Dasha White, and Douglas Kirt Mullins, Minor Children Appellees

No. 2000–SC–0508–DG.

Supreme Court of Kentucky.

Aug. 22, 2002.

Ronald L. Green, Boehl, Stopher & Graves, Lexington, Counsel for Appellant.

Lee W. Rowland, Baldani, Rowland & Richardson, Lexington, Counsel for Appellee.

GRAVES, Justice.

## I.  FACTS

This case arose from a fatal car wreck that occurred in Estill County on April 9, 1996.  Daniel Earl White (White) was killed when a trailer came loose from Rondle Lee's truck, crossed into White's lane, and collided with his truck.  Lee was an underinsured motorist for purposes of the Kentucky Motor Vehicle Reparations Act and held only $25,000 in liability insurance.  White held an insurance policy issued by Appellant, National Grange Mutual Insurance Company, which named both himself and his wife, Appellee Cynthia White, as insureds. Among other things, the policy provided for $100,000 underinsured motorist (UIM) coverage and no-fault coverage.

White had acquired the policy from the Sullivan Agency in Lima, New York on March 2, 1995.  However, at that time, Appellee had already moved to Kentucky, having left New York in April of 1994.  White's father, Earl White, had a long-term business relationship with the Sullivan Agency.  In fact, Earl paid the premiums on White's policy during 1995 and its renewal in March 1996.  On the policy application, White listed a New York address and provided New York driver's licenses for both himself and Appellee.  Both vehicles covered by the policy were registered in New York. White thereafter moved to Kentucky later in 1995.  Earl White claims that he informed the Sullivan Agency of this move;  however, the office manager of the Sullivan Agency, Eileen Ramsdell, testified that she did not receive notification that Appellee and White were no longer living in New York.

Appellant paid Appellee $75,000, which it claimed was all that it owed her pursuant to the policy.  Appellee disagreed, filing a declaratory action in the Estill Circuit Court where she claimed additional UIM benefits and survivor's economic loss benefits.  Following discovery, both parties moved for summary judgment.  In granting Appellee's motion, the court found that jurisdiction over Appellant existed pursuant to KRS 304.3–230 and KRS 304.11–040. The court further held that Kentucky law should govern since White was a Kentucky resident and the accident resulting in his death occurred here.  Appellee also received a favorable decision on the merits of the case, with the court holding that she was entitled to stacked UIM benefits of $200,000, as well as Survivor's Economic Loss benefits and Survivor's Replacement Service Loss pursuant to KRS 304.39–020(5)(e).

Appellant thereafter appealed the decision to the Court of Appeals, where the case was reversed and remanded for further fact finding.  The Court of Appeals held that the jurisdictional issue was not decided, as a genuine issue of material fact existed as to the extent of Appellant's knowledge concerning White's Kentucky residence.  This Court thereafter granted review.  Further facts will be developed as needed.

## II.  JURISDICTION

■  The trial court based personal jurisdiction upon both KRS 454.210 [1], Kentucky's Long Arm statute, and KRS 304.11–040 [2], which defines the procedures

**1.**  KRS 454.210, Personal Jurisdiction of Courts Over Nonresident, provides in pertinent part:

> (2)(a) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a claim arising from the person's:
> 1.  Transacting any business in this Commonwealth[.]

**2.**  The relevant portion of KRS 304.11–040(1), states in part:

for service of process on unauthorized insurers in Kentucky. As an initial matter, we find that KRS 304.11–040 does not confer jurisdiction on this Commonwealth. The trial court did not explain how KRS 304.11–040 acts as a jurisdictional statute, and we find no compelling reason to treat it as such. The language of the statute does not attempt to supersede the Long Arm statute via an independent grant of jurisdiction. Rather, KRS 304.11–040 merely provides for service of process upon unauthorized insurers who by their actions have already brought themselves under this Commonwealth's jurisdiction. Said more clearly, it is only after due process and our Long Arm statute have conferred jurisdiction over a party that KRS 304.11–040 may be applied. Because we find that jurisdiction over Appellant would exceed the limits of due process and our Long Arm statute, KRS 304.11–040 is inapplicable.

■ Further, assuming arguendo that KRS 304.11–040 was applicable, Appellant's actions did not bring it within the terms of the statute. Appellant did not perform any actions in Kentucky and therefore could not be classified as an unauthorized insurer for KRS 304.11–040 purposes. A similar situation was encountered in *Prewitt v. Great Southern Life Ins. Co.*, 350 F.Supp. 73 (E.D.Ky.1972). Therein, the District Court held that where the initial application, issuance and delivery of an insurance policy occurred in Texas, the insured's Kentucky residency was insufficient to bring the transaction within the ambit of KRS 304.11–040. We

fail to see how this case differs from *Prewitt* in any significant respect. All stages of the transaction were completed in New York. The only link between Appellant and this Commonwealth is that White moved here after the policy was issued. Appellant took no actions that could be construed as "acts of insurance business in Kentucky" as required by KRS 304.11–040. The statute clearly enumerates what constitutes the operation of an insurance business in Kentucky, and there is no proof that Appellant performed any of these acts. Therefore, Appellant was not subject to KRS 304.11–040.

■ Our Long Arm statute, KRS 454.210, was the other statute which purportedly gave the trial court jurisdiction over this controversy. A brief examination of KRS 454.210 reveals a precise list of actions that, if done, would give this Commonwealth jurisdiction over a non-resident defendant. Although Appellant has committed none of the prescribed acts, the statute itself is not the exclusive grantor of jurisdiction. On the contrary, the Long Arm statute has been interpreted to be merely a vehicle which allows Kentucky courts to exercise jurisdiction to the full constitutional limits of due process. *Mohler v. Dorado Wings, Inc.*, Ky.App., 675 S.W.2d 404 (1984); *Info–Med, Inc. v. Nat'l Healthcare, Inc.*, 669 F.Supp. 793 (W.D.Ky.1987); *Poyner v. Erma Werke GmbH*, 618 F.2d 1186 (6th Cir.1980), *cert. denied*, 449 U.S. 841, 101 S.Ct. 121, 66 L.Ed.2d 49 (1980). Therefore, this Court need not attempt to conform Appellant's actions to the confines of our Long Arm

No person or insurer shall directly or indirectly perform any of the acts of doing an insurance business as defined in KRS 304.11–020 to 304.11–050, inclusive, except as provided by and in accordance with the specific authorization by statute. However, should any unauthorized person or insurer perform any act of doing an insurance business..., it

shall be equivalent to and shall constitute an irrevocable appointment by such person or insurer...of the Secretary of State or his successor in office to be the true and lawful attorney upon whom may be served all lawful process in any action...arising out of any such acts of doing an insurance business.

statute; it will suffice for us to determine whether jurisdiction is proper under the Fourteenth Amendment.

■ In analyzing whether constitutional due process permits jurisdiction over Appellant, several questions must be answered: Did Appellant have minimum contacts with this Commonwealth such that maintenance of a suit would not offend traditional notions of fair play and substantial justice? *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Did Appellant purposefully avail itself by conducting activities within this Commonwealth, thus invoking the benefits and protections of our laws? *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). Did Appellant have a connection with this Commonwealth such that it should reasonably anticipate being haled into court here? *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). Because we determine that each of these questions must be answered in the negative, this Commonwealth cannot exercise *in personam* jurisdiction over Appellant.

The foundational case for courts making jurisdictional decisions is *International Shoe, supra*. In that decision, the United States Supreme Court set forth the test described above, that of "minimum contacts" with the forum state. Instead of defining "minimum contacts" by specifically naming the actions deemed to constitute minimum contacts, courts were encouraged to look at the situation as a whole to determine whether it would be fair to subject a party to suit in the forum state. Later cases, such as *Hanson, supra*, and *World–Wide Volkswagen, supra*, expanded upon the *International Shoe* test and gave meaning to what constitutes "minimum contacts."

In *Hanson*, the Supreme Court declared it essential that there be some act whereby a defendant purposefully avails itself of conducting activities within the forum state, thus invoking the benefits and protections of its laws. 357 U.S. at 253, 78 S.Ct. at 1240. The Court in *Hanson* further explained that the unilateral activity of someone other than the defendant cannot satisfy the requirement of contact with the forum state. *Id.*

The Court later reinforced that rule in *World–Wide Volkswagen, supra*, wherein, plaintiffs purchased a new car from their local dealer in New York. While traveling through Oklahoma, plaintiffs were involved in an accident. Plaintiffs then attempted to bring suit against the car dealer in Oklahoma. The Supreme Court held that the mere fortuitous circumstance that a single car sold in New York to New York residents happened to be involved in an accident while passing through Oklahoma did not constitute "minimum contacts." The Court rejected plaintiff's argument that it was foreseeable that the car might end up in Oklahoma and that jurisdiction was proper. It was instead held that "the foreseeability that is critical to due process analysis is not the mere likelihood that a product will find its way into the forum State. Rather, it is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." 444 U.S. at 297, 100 S.Ct. at 567.

■ In examining the facts of this case, it becomes clear that subjecting Appellant to the jurisdiction of this Commonwealth would not comport with due process. Appellant did not have "minimum contacts" with this Commonwealth. In fact, no contacts with this Commonwealth have been shown. The policy was bought and paid for in New York by New York residents. Appellant conducts no business in Ken-

tucky, nor does it advertise here. Thus, Appellant never purposefully availed itself of conducting activities here. The only connection with this Commonwealth seems to be that White moved here *after* purchasing the policy, and it is questionable whether Appellant ever received legally sufficient notice of this move. The unilateral activity of the insured cannot satisfy the minimum contacts requirement. *Hanson, supra.* Furthermore, since it did not conduct business here, Appellant had no reason to believe it would be haled into court in Kentucky. *World–Wide Volkswagen, supra.* It is therefore patently unfair to force Appellant to come to this distant jurisdiction and defend this case.

Appellee would base jurisdiction upon the insurance policy and her presence in this Commonwealth. However, the United States Supreme Court has acknowledged that a contract with a party residing in a different state does not automatically give rise to jurisdiction in the other state. In *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478, 105 S.Ct. 2174, 2185, 85 L.Ed.2d 528 (1985), the Court explained: "If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot." The question, then, is what is needed in addition to the contract for minimum contacts to be present. Although *McGee v. International Life Ins. Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), shows that a single insurance policy *can* demonstrate the contacts necessary for jurisdiction in a foreign state, the facts here are not analogous to *McGee.* In that case, a Texas insurance agency solicited and sold a single insurance policy to a California resident. The contract was delivered in California and the policy premiums were paid from there. Although the agency did no other business in California,

the Court found jurisdiction to be proper. The Court held: "It is sufficient for purposes of due process that the suit was based on a contract which had substantial connection with that State.... The contract was delivered in California, the premiums were mailed from there and the insured was a resident of that State when he died." *Id.* at 223, 78 S.Ct. at 201 (citations omitted). In this case, it is again noted that Appellant solicited the policy in New York, not Kentucky, and that all premiums were paid from New York. Thus, the contract had a substantial connection with no state other than New York and cannot serve as a source of contact with this Commonwealth.

■ The Court of Appeals remanded this case on the grounds that a material issue of fact existed as to whether Appellant knew of White's or Appellee's Kentucky residency. Mr. William McKenna, Appellant's vice-president, testified that if Appellant was notified of a change in residence, Appellant would eventually cancel the policy if the insured had relocated to a state where Appellant did not have a certificate of authority. Appellee's father-in-law, Earl White, claimed in an affidavit that he had advised the Sullivan Agency that Appellee's family had moved to Kentucky. Eileen Ramsdell, office manager of the Sullivan Agency denied that such notification was ever given. The Court of Appeals believed that this factual dispute was material to the jurisdictional analysis. It reasoned that if Appellant knew that Appellee or White was in Kentucky, then the fact that the policy was not canceled was an act, albeit one of omission, committed in this Commonwealth. That act could serve to strengthen Appellee's claim of jurisdiction by providing at least some contact with this Commonwealth. However, we do not find Appellant's knowledge of the White family's move to Kentucky to be

material to the question of whether jurisdiction exists.

■ First of all, as stated above, the general rule is that unilateral acts of another party cannot serve to provide minimum contacts. *Hanson, supra.* Even if Appellant was aware that White had moved to Kentucky and that Appellee was already living there, Appellant's purported "act" of not canceling the insurance policy would be strictly an act of omission. Since the only act of commission committed in this instance is White's move to Kentucky after the purchase of the policy, it is irrelevant whether or not Appellant actually knew of the move. Even if Appellant did receive notification of the move, the fact that the policy had not yet been canceled does not permit an inference that Appellant was purposefully availing itself of conducting activities in Kentucky. Purposeful conduct is not demonstrated by the mere happenstance of a client's nomadic whims.

Federal courts have recognized that minimum contacts cannot be established via an insured's move to a forum state after the policy was issued. *Rambo v. American Southern Ins. Co.,* 839 F.2d 1415 (10th Cir.1988). In *Hunt v. Erie Ins. Group,* 728 F.2d 1244, 1247 (9th Cir.1984), the Ninth Circuit Court of Appeals stated the rationale for this rule:

> In our view, Hunt's decision to move to California cannot be attributed to Erie. We sympathize with Hunt's contention that she had to come to California in order to obtain rehabilitative treatment. Nevertheless, it ultimately was Hunt's decision to move to California in order to receive the treatment. To characterize her decision as an intentional action by Erie, for purposes of meeting the purposeful availment requirement of due process, would frustrate the very policy behind that requirement: ensuring that a *"defendant's* conduct and connection

with the forum State are such that he should reasonably anticipate being haled into court there." (Citations omitted).

In the *Hunt* case, the defendant insurance company did have knowledge of the plaintiff's move to California. The company mailed bills to the plaintiff's address in that state and received payments which the plaintiff paid from that state. In the present case, not even those contacts with this jurisdiction are present. All statements were sent to the New York address given by White on the policy application, and all payments were remitted to Appellant by White's father from New York. What is clear from the *Hunt* and *Rambo* decisions is that even if Appellee or White had mailed premiums from Kentucky, jurisdiction would not be proper since Appellant did not commit an affirmative act in Kentucky. Thus the dispute as to whether Appellant knew of the White family's move to Kentucky is immaterial to the jurisdictional analysis.

Appellant makes various other arguments concerning the choice of law to be applied if jurisdiction is permissible. Since we have determined that this Commonwealth has no personal jurisdiction over Appellant, it is unnecessary to reach the choice of law question.

For the foregoing reasons, the decision of the Court of Appeals is reversed and this case is dismissed for lack of personal jurisdiction over Appellant.

LAMBERT, C.J., COOPER, GRAVES, JOHNSTONE, KELLER, and WINTERSHEIMER, J.J., concur.

STUMBO, J., dissents without opinion..