No. 04-052

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 74

MICHAEL CARTER and TINA SCHMIDT,

   Plaintiffs and Appellants,

  v.

MISSISSIPPI FARM BUREAU CASUALTY INSURANCE COMPANY,
d/b/a MISSISSIPPI FARM BUREAU INSURANCE, JOHN DOES 1-6
INSURANCE, JOHN DOES 1-6,

   Defendant and Respondent.

APPEAL FROM:  District Court of the Fourth Judicial District,
       In and for the County of Missoula, Cause No. DV 2003-353
       The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

   For Appellants:

     Eric Rasmussen, Bulman Law Associates, Missoula, Montana

   For Respondent:

     Randall Nelson and Colette Davies, Nelson & Dahle, Billings, Montana

   For Amicus:

     Gene R. Jarussi, Jarussi & Bishop, Billings, Montana (Amicus MTLA)

          Submitted on Briefs: July 7, 2004

            Decided: March 23, 2005

Filed:

            _____
                Clerk
Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Michael Carter and Tina Schmidt ("Carter" and "Schmidt," respectively), appeal from an Order of the Montana Fourth Judicial District Court, Missoula County, in which the court granted summary judgment to defendant Mississippi Farm Bureau Casualty Insurance Company ("MFBCIC") and dismissed Carter's and Schmidt's lawsuit for lack of personal jurisdiction over MFBCIC. We affirm.

## ISSUE

¶2 We restate the issue as follows: Did the District Court err when it granted MFBCIC's motion for summary judgment on the grounds that the court did not have personal jurisdiction over MFBCIC?

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Carter and Schmidt filed a declaratory judgment action against MFBCIC in the Montana Fourth Judicial District Court, Missoula County, and requested interpretation of an insurance contract. In their Complaint, Carter and Schmidt alleged they were in a motor vehicle collision in Sanders County, Montana, on December 28, 2001, in which they both sustained head injuries. Carter was driving a Toyota pick-up truck which was insured by MFBCIC and Schmidt was his passenger. The driver of the other vehicle involved in the crash was insured by Metlife Auto and Home, which settled with Carter and Schmidt for the policy limits of $25,000 per person, $50,000 per incident. Carter and Schmidt made claims under Carter's MFBCIC policy for medical payments coverage and underinsured motorist coverage ("UIM coverage"). They allege in their Complaint that MFBCIC paid only $5,000

2

to each of them for medical payment coverage and has refused to pay UIM coverage despite demands to do so. They sought declaratory judgment from the District Court with regard to issues surrounding the various coverages, stacking, and subrogation.

¶4 Carter and his family lived in Whitefish, Montana, for several years and then moved to Mississippi. They lived in Mississippi approximately two years, and returned to live in the State of Montana on December 5, 2001. The accident at issue occurred about three weeks later. At that time, it was Carter's intent to live in Montana year-round; however, he has since decided to be a "snowbird" and spend winters in Mississippi and the rest of the year in Montana. At the time of the accident, Carter asserted he was receiving his mail in Montana, but he continued to maintain a post office box in Mississippi which his mother-in-law checked and from which she forwarded important mail to his Montana address.

¶5 It appears that at the time of the accident, Carter had four motor vehicles insured through MFBCIC. Each of the vehicles' policies showed the vehicles to be garaged in Lafayette County, Mississippi. Subsequent to insuring his motor vehicles with MFBCIC, Carter relocated to Montana. However, he did not notify MFBCIC that he moved to Montana. He explained that since the policy was paid in full, he did not see a need to notify the insurance company that he had relocated. Carter stated that prior to the accident, he had intended to let his MFBCIC policy lapse upon expiration, and that he had planned to purchase a new policy in Montana.

¶6 Carter also testified that prior to leaving Mississippi, he spoke with his MFBCIC insurance agent Cecil Staggs and asked if there would be any problems with coverage if he

3

moved to Montana and Staggs assured him there would not. Staggs denied that Carter informed him that he planned to move to Montana or that the insured vehicles would be garaged outside of Mississippi.

¶7 In response to the Complaint, MFBCIC entered a limited appearance to contest the District Court's exercise of personal jurisdiction, and moved for summary judgment on the issue. Carter and Schmidt opposed the motion and filed a cross-motion for summary judgment regarding personal jurisdiction. The District Court granted summary judgment to MFBCIC, concluding it did not have personal jurisdiction over MFBCIC. Carter and Schmidt timely appeal. The Montana Trial Lawyers Association ("MTLA") has also filed an *amicus curiae* brief in this case.

## STANDARD OF REVIEW

¶8 We review a district court's grant of summary judgment *de novo*, applying the same evaluation under Rule 56, M.R.Civ.P., as the district court. *Glacier Tennis Club v. Treweek Constr.,* 2004 MT 70, ¶ 21, 320 Mont. 351, ¶ 21, 87 P.3d 431, ¶ 21 (citations omitted). In other words, the party moving for summary judgment has the initial burden of proving that there are no genuine issues of material fact that would permit a non-moving party to succeed on the merits of the case, and if the moving party meets that burden, then the non-moving party must provide substantial evidence that raises a genuine issue of material fact in order to avoid summary judgment in favor of the moving party. *Glacier*, ¶ 21 (citations omitted). Once it is established that no genuine issues of material fact exist, the district court must then determine whether the moving party is entitled to judgment as a matter of law, and this Court

4

reviews that determination to determine whether the district court erred. *Glacier*, ¶ 21 (citations omitted).

## DISCUSSION

¶9      Did the District Court err when it granted MFBCIC's motion for summary judgment on the grounds that the court did not have personal jurisdiction over MFBCIC?

¶10     Carter argues that, since MFBCIC "knew" he relocated but did not cancel his insurance policies, MFBCIC maintained sufficient contact with Montana to subject itself to personal jurisdiction within Montana's courts. He claims that through conversations which he had with Staggs, MFBCIC was aware that Carter had a "connection" with Montana and "ties" to this state prior to the accident. Carter and Schmidt further argue that the District Court relied upon an inapplicable case and erroneously considered the facts in a light most favorable to MFBCIC in determining that personal jurisdiction over MFBCIC did not exist. Carter and Schmidt maintain that Montana has specific jurisdiction over MFBCIC because, by virtue of the automobile accident having occurred here, Montana is the place of performance of the insurance contract.

¶11     MFBCIC responds that it has not engaged in any act which would give rise to specific jurisdiction in this case, and asserts that it is a Mississippi corporation which has no presence in Montana. It has no offices or agents in Montana, does not advertise here, and is not authorized to conduct business in Montana as a foreign insurer. MFBCIC notes that Carter was a Mississippi resident when MFBCIC issued his insurance policy, and the policy in

effect at the time of the accident reflected that Carter's insured vehicles were garaged in Mississippi.

¶12   Carter offered four documents to support his contention that MFBCIC had sufficient contacts with Montana to subject it to the jurisdiction of its courts. MFBCIC points out that only one of Carter's four documents pre-dated the accident, and that document is a Montana bank lien, which was sent to Carter's Mississippi address and listed a Mississippi county as the garaging location of the subject vehicle. Two of the other three documents were premium payments drawn on Carter's Montana checking accounts *after* the accident and both premium notices list a Mississippi county as the garaging location of the vehicles. The final document was an Automobile Policy Change Request form, which was sent to Carter's Montana address about a year and a half *after* the accident. MFBCIC further argues that, even if these documents could somehow impute knowledge to MFBCIC that Carter was residing in Montana, the unilateral action of an insured who changes residency does not automatically cause the insurer to become subject to personal jurisdiction in the courts of the insured's new state of residency.

¶13   In its Order and Memorandum, the District Court relied upon the two-part test we enunciated in *Bi-Lo Foods, Inc. v. Alpine Bank, Clifton*, 1998 MT 40, ¶ 15, 287 Mont. 367, ¶ 15, 955 P.2d 154, ¶ 15. In order to determine whether a Montana court can exercise personal jurisdiction over a nonresident defendant, the court first determines whether jurisdiction exists either by way of the defendant being found within Montana or by way of

6

the long-arm statutes; then, the court must determine whether exercising jurisdiction comports with the defendant's due process rights.

¶14    The District Court determined that Carter and Schmidt, by relying upon cases which did not ever address the issue of personal jurisdiction, failed to state a compelling argument upon which the court could conclude that it had specific jurisdiction over MFBCIC. The District Court further noted that MFBCIC was not made aware of Carter's move to Montana until after the accident occurred, and in fact Carter's own evidence revealed that his MFBCIC membership renewal notices subsequent to the accident were mailed to a Mississippi address.

¶15    In its *amicus* brief, MTLA asserts that neither party in this case has applied the appropriate law, and draws our attention to language within the MFBCIC insurance policy which states that its territory of coverage applies to automobile accidents within the United States. MTLA further asserts that Carter's deposition testimony that he told his MFBCIC insurance agent that he and his wife resided part of the year in Montana is pivotal to the outcome of this case. MTLA argues that this Court should extend the benefits and protections of Montana law to part-time residents during the time that they are actually residing in Montana, and not consider part-time residents to be in the same class as those people who are merely passing through the state.

¶16    However, *amici curiae* are not parties. They cannot assume the functions of parties, nor create, extend, or enlarge issues. We consider the briefs of *amici* only insofar as they coincide with the issues raised by the parties to the action. *Montana Power Co. v. Carey*

(1985), 216 Mont. 275, 277, 700 P.2d 989, 990-91 (citations omitted); *Montana Wildlife Federation v. Sager* (1980), 190 Mont. 247, 265, 620 P.2d 1189, 1200 (citations omitted). Furthermore, we note that although MTLA warns us of dire consequences to the substantial number of people who call Montana home for part of the year, the fact is that this is the first such case to come before us. Moreover, this case encompasses a very narrow set of circumstances in which a part-time resident of Montana insures his or her automobile through a remote and strictly regional insurance carrier which does not do business in Montana. Thus, this case is distinguishable from the vast majority of cases in which personal jurisdiction is never an issue for the simple reason that the insurer is a national carrier doing business in Montana.

¶17     In support of their contention that jurisdiction exists over MFBCIC on the grounds that the motor vehicle accident occurred within this State--and thus Montana became the "place of performance" of Carter's MFBCIC policy--Carter and Schmidt argue that we have consistently held that "when a motor vehicle accident occurs on the roadways of the State of Montana, insurance policies formed outside the State of Montana, will be interpreted by the courts of Montana," citing *Kemp v. Allstate Ins. Co.* (1979), 183 Mont. 526, 601 P.2d 20; *Youngblood v. American States Ins. Co.* (1993), 262 Mont. 391, 866 P.2d 203; *Mitchell v. State Farm Ins. Co.*, 2003 MT 102, 315 Mont. 281, 68 P.3d 703; and *Swanson v. Hartford Ins. Co. of Midwest*, 2002 MT 81, 309 Mont. 269, 46 P.3d 584, in support of their position. They also claim that, in *Farmers Ins. Ex. v. Portage La Prairie Mut. Ins. Co.* (1990), 907

8

F.2d 911 ("Farmers"), the Ninth Circuit Court of Appeals ruled that Montana has jurisdiction over foreign insurers.

¶18 MFBCIC responds that *Kemp*, *Youngblood*, *Mitchell*, and *Swanson* are inapposite, as personal jurisdiction was not at issue in those cases. These cases all involve national insurance companies which routinely transacted business in the State of Montana on the date of the loss at issue, whereas MFBCIC is a regional Mississippi insurer. MFBCIC also points out that these cases address which state's law governs the applicable insurance contracts--not whether a particular state's courts have personal jurisdiction over the defendant insurance company.

¶19 Summary judgment is appropriate only when there are no material facts in dispute. Rule 56(c), M.R.Civ.P. Summary judgment is not appropriate if any material issue of fact remains which would entitle the nonmoving party to recover. *Howard v. Conlin Furniture No. 2, Inc.* (1995), 272 Mont. 433, 436, 901 P.2d 116, 118. The only disputed fact of record is whether Carter informed his MFBCIC agent that he was moving to Montana. Thus, we must determine whether Carter's informing his insurance agent that he intended to move to Montana would be material to the outcome of this case.

¶20 Carter and Schmidt argue that Carter's informing his agent of his plan to move to Montana caused MFBCIC to purposefully avail itself of Montana's laws because it did not cancel his policy when he moved, although he concedes he did not specifically inform MFBCIC that the move had occurred. MTLA argues that Carter's part-time residence is critical for, if we were to deny him the ability to sue his out-of-state insurer here, we would

9

deprive him of the benefits and protections of Montana law during the time in which he resides in this State. However, it is important to emphasize that this appeal is not about whether Carter and Schmidt are covered by Carter's MFBCIC policy; rather, the question is whether or not they can *litigate the coverage dispute in Montana*. The underlying dispute Carter has with MFBCIC relates to his coverage and has nothing to do with the fact that the accident at issue occurred in Montana or that Carter was living here at the time. Thus, whether or not Carter informed Staggs that he intended to move to Montana is not material to the outcome of this case, and is not a material fact for the purposes of summary judgment pursuant to Rule 56, M.R.Civ.P.

¶21     MFBCIC argues that the unilateral act of an insured moving to another state cannot in and of itself provide sufficient minimum contact of the insurer to the forum, regardless of its knowledge of the move, citing *National Grange Mut. Ins. Co. v. White* (Ky. 2002), 83 S.W.3d 530, 535-36. In *National Grange*, the Kentucky Supreme Court reasoned that even if the insurance company was aware that its insured had moved to another state (in that case, Kentucky), the insurance company's purported "act" of not canceling the insured's policy was insufficient to permit an inference that the insurer was purposefully availing itself of conducting activities in the insured's new state of residency, and that the requisite minimum contacts with the state could not be established merely by the insured changing residency after the policy was issued. *National Grange*, 83 S.W.3d at 536. It thus argues that Carter's residency change--without more--is insufficient to demonstrate that MFBCIC established

10

minimum contacts with Montana merely by failing to cancel Carter's insurance policy when he moved here.

¶22　In *Strickland Ins. Group v. Shewmake* (Fla. Dist. Ct. App. 5th Dist. 1994), 642 So. 2d 1159, 1161 (citing *Meyer v. Auto Club Ins. Ass'n* (Fla. 1986), 492 So. 2d 1314), the Fifth District Court of Appeal of Florida explained that where an insurer and the insured were both out-of-state residents at the time the contract of insurance was issued, the fact that there was an accident in Florida does not give Florida courts jurisdiction over the insurer even if the insured, by a unilateral act, moves to Florida. "The policy of insurance," the court explained, "can not be read so broadly as to allow the insurer to be sued wherever the insured is involved in an accident, even though the contract of insurance applies to accidents and losses which occur in any of the 50 states. . . ." *Strickland*, 642 So. 2d at 1161. Similarly here, Carter and MFBCIC were both Mississippi residents at the time the insurance contract was issued, and it was only a few weeks before the accident that Carter, the insured, moved to Montana in a unilateral act.

¶23　MFBCIC notes that other courts have held that in insurance coverage disputes, selling automobile insurance to someone who drives the covered vehicle into another state does not automatically grant personal jurisdiction over an insurance company that does not do business in that state. This is so even though the automobile is within the company's territory of coverage. See *State ex. rel. Ill. Farmers Ins. v. Koehr* (Mo. Ct. App. 1992), 834 S.W.2d 233. While a promise to provide coverage throughout the United States may establish that an insurer has agreed to submit to jurisdiction in any forum that has jurisdiction

11

to adjudicate claims against its insured, this agreement to defend and indemnify its insured in any state does not imply an agreement to allow its insured to bring suit against it in any state. *Bahn v. Chicago Motor Club* (Md. 1993), 634 A.2d 63, 71 (citation omitted). Similarly, the Supreme Court of Arizona held that in defining when a defendant should "reasonably anticipate" out-of-state litigation, the foreseeability of an injury in another state is not a sufficient benchmark for exercising personal jurisdiction in a breach of contract action filed by the insured against the insurer. *Batton v. Tennessee Farmers Mut. Ins. Co.* (Ariz. 1987), 736 P.2d 2, 5 (citing *World-Wide Volkswagen Corp. v. Woodson* (1980), 444 U.S. 286, 295, 100 S.Ct. 559, 566, 62 L.Ed.2d 490, 500, and *Burger King Corp. v. Rudzewicz* (1985), 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528, 542). This is in line with our situation here: while MFBCIC could reasonably anticipate that its insured could suffer an injury within its fifty-state coverage area, thus triggering its duty to defend and indemnify, the foreseeability of that injury--without more--is not sufficient to subject the insurer, MFBCIC, to specific personal jurisdiction within Montana's courts.

¶24 Carter and Schmidt urge us to apply the Ninth Circuit's holding in *Farmers* to the facts presented here. In *Farmers*, Portage, a foreign insurer, insured a vehicle that was involved in an accident in Montana. The driver of that vehicle was insured by Farmers. When the driver was sued, demand was made upon Portage, as the insurer of the vehicle, to appear and defend the driver. Portage refused to appear and defend, so Farmers stepped in and settled the claim. Farmers then sued Portage, which in turn raised the absence of personal jurisdiction as a defense. *Farmers*, 907 F.2d at 912. The district court ruled in

12

favor of Portage, but the Ninth Circuit reversed, concluding that Portage failed to rebut the prima facie showing that it had voluntarily injected itself into the Montana forum. *Farmers*, 907 F.2d at 915.

¶25 We decline to apply *Farmers* here. In that case, Portage arguably had an obligation to appear and defend the driver who had been sued in Montana as a result of an accident, while here, MFBCIC had no similar obligation to appear and defend because neither its insured or an omnibus insured was sued in this state. It is the defendant's forum-related conduct that is at issue, and here, there simply is none on the part of MFBCIC.

¶26 MFBCIC further directs our attention to *OMI Holdings, Inc. v. Royal Ins. Co. of Canada* (10th Cir. 1998), 149 F.3d 1086, 1093-94, in which the Tenth Circuit found the holding in *Farmers* to be "troubling," because the court relied upon the location of the accident in determining whether personal jurisdiction could be had over the non-resident insurance company. The court reasoned that the acts of the insured and of third parties were not relevant in measuring the defendant insurance company's minimum contacts with Montana. *OMI*, 149 F.3d at 1094. While the court agreed that, by contracting to defend an insured in a given forum state, the insurer creates some contact with that forum state, the court further explained that it was troubled by the apparent assumption in *Farmers* that,

> by agreeing to defend its insured in any forum, an insurer foresees being sued by its *own* insured in any forum when a coverage dispute arises. An insurance company who issues a policy in which it agrees to *defend* its insured in a certain forum can undoubtedly foresee that it may have to provide a defense for its insured who is haled into court there. It does not follow, however, that by agreeing to defend in the forum, that the insurance company also by implication agrees that it will litigate disputes between it and its insured

13

regarding the terms of an insurance contract in a foreign forum. While it is reasonably foreseeable that an insured would be involved in litigation with a third-party in another forum, it is not necessarily foreseeable that a dispute between the insured and the insurer over an insurance contract prepared, negotiated, and executed pursuant to Canadian law in Canada with a Canadian company would be litigated in a foreign forum where neither party has any contacts.

*OMI*, 149 F.3d at 1095 (emphasis in original). We determine that the reasoning behind the case law cited by MFBCIC is persuasive. While Montana is part of the area of coverage found within Carter's insurance policy with MFBCIC, and while MFBCIC may very well have been obligated to defend Carter in Montana's courts, that is not the situation before us.

¶27    It is important to differentiate between a case in which a company's insured is sued as a result of a car accident in a foreign state, and the case at hand, where the insured is suing its regional insurer in a foreign state for breach of contract. The cases are distinguishable on multiple levels. First, *Farmers* involved an indemnity policy, while this case involves first-party coverage. In the former case, the insurer is obligated by the terms of its policy to appear for and defend its insured, wherever an accident and resulting lawsuit occurs. *Farmers*, 907 F.2d at 913. Personal jurisdiction in such cases never becomes a question, as the insured's involvement in an accident in the foreign state is sufficient to confer jurisdiction upon him, and his contract of insurance follows him. *Farmers*, 907 F.2d at 914 (citing *Eli Lilly and Co. v. Home Ins. Co.* (D.C.Cir. 1986), 254 U.S. App. D.C. 1, 794 F.2d 710, 721, cert. denied, 479 U.S. 1060, 107 S.Ct. 940, 93 L.Ed.2d 991 (1987)). In the latter case, however, the place of the accident is immaterial for purposes of jurisdiction, as the action is one to enforce a contract. And in such cases, as in any action between residents of

14

different states, the question of whether the forum has personal jurisdiction over the other contracting party is a question that must be answered before--and separate and apart from-- the inquiry into whether the contract is enforceable. See *Edsall Constr. Co., Inc. v. Robinson* (1991), 246 Mont. 378, 382, 804 P.2d 1039, 1042 (entering into a contract with a Montana resident insufficient to subject nonresident to personal jurisdiction). In this connection, it bears repeating that the question here is not *whether* Carter and Schmidt may sue MFBCIC; the question is *where* the suit may be maintained.

¶28    As the District Court noted in its Order and Memorandum, personal jurisdiction can be had over a non-resident defendant in two ways: the defendant must either be "found within" Montana, or must become subject to specific jurisdiction by committing any of the acts enumerated under Montana's "long-arm" jurisdiction statute, pursuant to Rule 4(B)(1), M.R.Civ.P. Should specific jurisdiction be found, the court must further determine whether exercising jurisdiction comports with the defendant's due process rights. *Bi-Lo*, ¶ 15.

¶29    The difficulty in the case before us is that Carter and Schmidt do not offer any basis under Rule 4(B)(1), M.R.Civ.P., for conferring long-arm jurisdiction over MFBCIC; in fact, they do not even cite the Rule in their argument. In order to reach and resolve the question of whether it had long-arm jurisdiction over MFBCIC, the District Court interpreted their contention that the "place of performance" of the insurance contract was Montana to be an argument for the application of Rule 4(B)(1)(d), M.R.Civ.P. This provision states that specific jurisdiction may be had over a non-resident defendant if the defendant contracts "to insure any person, property or risk located within this state at the time of contracting[.]" It

15

is undisputed that at the time of contracting, Carter resided in Mississippi, and the property to be insured under the contract was garaged in Mississippi. Thus, there was no basis for a finding of jurisdiction under this provision. Nor do the other provisions of Rule 4(B)(1), M.R.Civ.P., provide a basis for the assertion of long-arm jurisdiction. While Carter has every right to sue MFBCIC over its coverage issues, the courts of this State do not have the personal jurisdiction over MFBCIC that is required as a predicate to the maintenance of such an action here. Therefore, we conclude that the District Court did not err in granting summary judgment in favor of MFBCIC.

## CONCLUSION

¶30 For the foregoing reasons, we affirm the District Court.


/S/ PATRICIA O. COTTER


We Concur:

/S/ KARLA M. GRAY
/S/ JOHN WARNER
/S/ JIM RICE


16

Justice W. William Leaphart dissenting.

¶31 I respectfully dissent.

¶32 The courts of Montana have personal jurisdiction over MFBCIC. The exercise of jurisdiction is consistent with both the Constitution and Montana's long-arm statute, Rule 4(B)(1), M.R.Civ.P.

¶33 In discussing the issue of due process, the Court relies upon several cases that seek to distinguish (1) personal jurisdiction derived from an insurance contract's indemnity policy from (2) (the absence of) personal jurisdiction derived from an insurance contract's first-party coverage. Although the Court has non-binding precedent on its side, that is all it has. The cases the Court relies on distinguish between the two situations in two different ways, both of which do not stand up to a reasonable inquiry.

¶34 First, although the Court does not say so, the *Bahn* case it relies on attempts to distinguish (1) from (2) by arguing that in (1) personal jurisdiction arises from tort liability, whereas in (2) personal jurisdiction arises from contract liability. *Bahn*, 634 A.2d at 71. Indeed, in a suit by a third-party driver against the *insured*, the underlying matter is one of tort. However, the court's personal jurisdiction over the *insurer* is based upon contract (the indemnity clause). Similarly, in (2) the insured's claim against the insurer is also one of contract (the underinsured motorist clause). There is no reason to conclude that jurisdiction arises out of the indemnity clause but not the underinsured motorist clause of the same contract.

¶35 Second, the Court relies on cases holding that an insurer meets the "reasonably anticipates" requirement of *World-Wide Volkswagen* in (1) but not in (2). *See Batton*, 736 P.2d at 6-7. Although the Court is correct that the indemnity clause does not give rise to a reasonable anticipation by the insurer that it may be sued by the insured in Montana, that is a strawman argument. The insured's suit is not grounded in the indemnity clause. It is based upon the first party coverage under the underinsured motorist clause.

¶36 The circumstances of the present case are different from *World-Wide Volkswagen*, a products liability case which did not involve a contract of insurance. *World-Wide Volkswagen*, 444 U.S. at 288, 100 S.Ct. at 562, 62 L.Ed.2d at 495. In contracting to insure a driver in all fifty states (as in this case), the insurer must reasonably expect that the insured driver can be involved in an accident in any one of those states and, in that event, the insurer may as a matter of contract have to appear and defend in that state either under the indemnity clause or the underinsured motorist clause. Given that the insured's injuries occur in the state of the accident and that the witnesses to the accident are most likely residing there, the insurer, MFBCIC, could reasonably anticipate being summoned into the courts of the state of the accident to litigate liability for underinsured motorist coverage.

¶37 Rule 4(B)(1), M.R.Civ.P., provides:

> Jurisdiction of persons. (1) Subject to jurisdiction. All persons found within the state of Montana are subject to the jurisdiction of the courts of this state. In addition, any person is subject to the jurisdiction of the courts of this state as to any claim for relief arising from the doing personally, through an employee, or through an agent, of any of the following acts: . . . (d) contracting to insure any person, property or risk located within this state at the time of contracting . . . .

18

¶38    In analyzing the long-arm statutes, the Court, at ¶ 29, reasons as follows:

> It is undisputed that at the time of contracting, Carter resided in Mississippi, and the property to be insured under the contract was garaged in Mississippi. Thus, there was no basis for a finding of jurisdiction under this provision. Nor do the other provisions of Rule 4(B)(1), M.R.Civ.P., provide a basis for the assertion of long-arm jurisdiction.

Although the Court places Carter (the "person") and his vehicle (the "property") in Mississippi at the time of contracting, and thus outside the reach of Montana's long-arm statute, the Court ignores the other factor which can trigger jurisdiction, "risk."

¶39    *In Parker v. Fireman's Insurance Co. of Newark, N.J.* (S.C. App. 1988), 375 S.E.2d 325, 326-27, Merit, an Illinois insurer, insured an automobile owned by Fernie, a Florida resident. Merit had never been licensed to conduct business in South Carolina and did not sell Fernie his policy or collect any premiums from him in South Carolina. Parker was injured in a collision with Fernie's insured vehicle in South Carolina. Parker filed a declaratory judgment against Merit in South Carolina. The lower court denied Merit's motion to dismiss, in which Merit had argued that it had not acted so as to authorize the South Carolina court's exercise of personal jurisdiction.[1] On appeal, the court quoted from South Carolina's long-arm statute, which like Montana's includes: "(f) contracting to insure any person, property or risk located within this state at the time of contracting." Although neither Fernie (the "person") nor his vehicle (the "property") were in South Carolina at the time of contracting, the court, nonetheless, concluded that jurisdiction was proper under subsection

---

[1] Although the *Parker* case involves a third-party claim, rather than a direct suit by an insured, there is no suggestion that Merit was subject to personal jurisdiction in South Carolina by virtue of an indemnity clause.

(f) since Merit had contracted to insure Fernie's automobile while it moved through the eastern United States, including South Carolina. In other words, the Court, by negative implication, relied on the "risk" factor for exercise of long-arm jurisdiction.

¶40     In similar fashion, Carter was insured against a "risk located within this state at the time of contracting." Rule 4(B)(1)(d), M.R.Civ.P.  His policy stated, "This policy applies only to automobile accidents during the policy period within the United States of America . . . ."  Carter was insured by MFBCIC for the "risk" of being injured by an underinsured motorist while in the State of Montana, one of the fifty states.  Carter satisfied the constitutional and long-arm requirements for the exercise of jurisdiction of the insurer.  I would reverse the District Court's grant of summary judgment.


                                        /S/ W. WILLIAM LEAPHART


Justice James C. Nelson joins in the dissent of Justice Leaphart.

                                        /S/ JAMES C. NELSON