**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TIMOTHY R. KING,
              *Plaintiff-Appellant,*

              v.

AMERICAN FAMILY MUTUAL
INSURANCE COMPANY; AMERICAN
STANDARD INSURANCE COMPANY OF
WISCONSIN,

              *Defendants-Appellees.*

No. 08-35988

D.C. No.
1:08-cv-00014-CSO

OPINION

Appeal from the United States District Court
for the District of Montana
Carolyn S. Ostby, Magistrate Judge, Presiding

Submitted* June 7, 2010
Portland, Oregon

Filed January 31, 2011

Before: Cynthia Holcomb Hall, Ferdinand F. Fernandez, and
M. Margaret McKeown, Circuit Judges.

Opinion by Judge McKeown;
Dissent by Judge Fernandez

---

*The panel unanimously concludes that this case is suitable for decision
without oral argument. *See* Fed. R. App. P. 34(a)(2).

## COUNSEL

Guy W. Rogers, Jon A. Wilson, Brown Law Firm, Billings, Montana, for the plaintiff-appellant.

Lynn M. Grant, Cashmore & Grant, Billings, Montana, for the defendants-appellees.

## OPINION

McKEOWN, Circuit Judge:

Imagine this scenario:

An out-of-state insurance company is contemplating doing business in Montana. Preliminary to any authorization to sell policies or the transaction of any business, state law requires the company to appoint the Commissioner of Insurance for service of process, which it did. Although the company began the licensure application process, the company cannot yet sell policies in Montana and has not completed the regulatory process to do so. The company has no contacts or contracts, no sales agents or producers, no employees, and no offices in Montana, nor has it filed insurance rates and other forms necessary to do business, solicited any business, advertised, sold any policies, collected any premiums, or transacted any business in Montana. The company is, in short, 99.99% "Montana free." Although it has done nothing more than dip its toe in the water to test the idea and preserve its option of doing business in Montana at some undetermined point in the future, the company now faces the prospect of being subject to general jurisdiction.

We hold that this toe—the mere appointment of an agent for service of process—does not subject the company to general personal jurisdiction in Montana. Numerous Supreme Court opinions and Montana law counsel that such testing of the waters does not constitute a generalized consent to be sued in Montana. Nor is the appointment of an agent for service of process sufficient to confer either general or specific personal jurisdiction over the company under our controlling standards. The constitutional standard of "minimum contacts" has practical meaning in the context of personal jurisdiction. Mere appointment of an agent for service of process cannot serve as a talismanic coupon to bypass this principle. We therefore affirm the district court's dismissal of this suit for lack of personal jurisdiction.

## BACKGROUND

In 2007, Timothy King and his wife, Gwynne King,[1] were

---

[1] Gwynne King has since been dismissed as a party to this appeal.

involved in a motorcycle accident in Montana. The Kings are Colorado residents who own four vehicles, all of which are garaged in Colorado and are insured under policies that were issued in Colorado by either American Family Mutual Insurance Company or American Standard Insurance Company of Wisconsin (collectively, "the Companies"). None of the insured vehicles were involved in the accident that gave rise to this dispute.[2] The Companies do not sell insurance policies in Montana, although the Kings' policies do provide coverage for accidents occurring anywhere within the United States.

The Companies are organized under Wisconsin state law, and their principal places of business are in Wisconsin. In 2000, the Companies began exploring the possibility of becoming authorized to issue insurance policies in Montana. As an initial step, the Companies applied for certificates of authority to transact business in the state.

In applying for the certificates, and under the governing Montana statute, the Companies executed a form appointing the Montana Commissioner of Insurance as their registered agent for service of process in Montana. *See* Mont. Code Ann. § 33-1-601 (2010). This appointment is "irrevocable, binds the insurer and any successor in interest or to the assets or liabilities of the insurer, and remains in effect as long as there is in force in Montana any contract made by the insurer or obligations arising from a contract." *Id.*

The state issued certificates of authority to the Companies in July 2001. However, neither company has completed the process of obtaining authorization to sell insurance and transact business in Montana. Before the Companies may issue insurance policies in Montana, the Companies must also, for example, submit their rate schedules to the Insurance Com-

---

[2]We express no opinion about where the dispute between the parties actually "arose." This issue was not before the district court, and the parties do not raise it on appeal.

missioner, *see* Mont. Code Ann. § 33-16-203, submit and obtain approval of all insurance forms that will be used in Montana, *see id.* § 33-1-501(1)(a), and submit a list of sales agents and producers, *see id.* §§ 33-17-231, 33-17-236. As of June 2008, the Companies had not taken any of these steps. They had, however, paid annual fees from 2002 through 2008 in order to preserve their Montana business names and the progress made on their applications to do business in the state.

In accordance with Montana law, the Companies have not conducted any business in the state of Montana. They have no offices in Montana, no employees, agents, or officers in Montana, and have never solicited business in Montana. Between 2001 and 2007, the Companies did not issue or sell any insurance policies in Montana and did not collect any premiums in the state. Had the Companies done so, because they were not authorized to sell insurance in Montana, they would have been subject to penalties and other remedies. *See* Mont. Code Ann. §§ 33-1-317, 33-1-318, 33-2-118, and 33-2-119.

## ANALYSIS

### I. MONTANA STATUTES AND CASE LAW GOVERN THE QUESTION OF WHETHER THE COMPANIES HAVE CONSENTED TO PERSONAL JURISDICTION

We review de novo the district court's ruling that it lacked personal jurisdiction over the Companies. *Love v. Associated Newspapers, Ltd.*, 611 F.3d 601, 608 (9th Cir. 2010). Our analysis of whether the Companies' appointment of an agent for service of process is a sufficient hook for the exercise of personal jurisdiction begins with a line of venerable Supreme Court cases.

The Court first considered the issue in *Pennsylvania Fire Insurance Co. of Philadelphia v. Gold Issue Mining & Milling Co.*, 243 U.S. 93 (1917). In *Pennsylvania Fire*, the defendant insurer executed a power of attorney that made service on the

superintendent of the insurance department of Missouri equivalent to personal service. 243 U.S. at 94. The Supreme Court held that the insurer's appointment of a resident agent for service of process constitutionally subjected the insurer to suit in Missouri for cases growing out of the insurer's activities both in Missouri and elsewhere. *See id.* at 95. The linchpin that made this holding possible, however, was the Supreme Court of Missouri's interpretation of the governing state statute.

The Missouri statute at issue in *Pennsylvania Fire*

> requir[ed] all [insurers doing business in Missouri] to appoint the insurance commissioner of [Missouri] as their agent to accept service of process . . . and to acknowledge receipt of the same when 'issued by any court of record, justice of the peace or other inferior court, and upon whom such process may be served for and in behalf of such company *in all proceedings that may be instituted against such company in any court of this state*.'

*Gold Issue Mining & Milling Co. v. Pa. Fire Ins. Co. of Phila.*, 184 S.W. 999, 1004-05 (Mo. 1916) (quoting Mo. Rev. Stat. § 7042 (1909)).[3] Previous versions of the Missouri statute had "limit[ed] the process of the [Missouri] courts . . . to causes of action arising out of contracts . . . made in [Missouri]." *Id.* at 1005. The Missouri Supreme Court held that, by contrast with those earlier versions, the more expansive language of the current version of § 7042 "clearly authorized the superintendent of insurance to acknowledge the receipt and service of process for any such company *in any and all transitory causes of action* that might be brought by any one against it in the [Missouri] courts." *Id.* (emphasis added). The state supreme court went on explain at length that, so construed, § 7042 was constitutional. *See id.* at 1005-21.

---

[3]The appointment of the insurance commissioner remained valid "so long as [the insurer had] any policies or liabilities outstanding in [Missouri]." Mo. Rev. Stat. § 7042 (1909).

**[1]** On appeal, the Supreme Court noted that the insurer had "appoint[ed] an agent in language that rationally might be held to" subject it to personal jurisdiction for any and all suits, and noted that "[t]he language has been held to go to that length" by the state supreme court. *Pennsylvania Fire*, 243 U.S. at 95. The Court then affirmed the constitutionality of the statute as construed by the Missouri Supreme Court, concluding that when an insurer executes a document consenting to jurisdiction, the insurer "takes the risk of the interpretation that may be put upon [the document] by the courts." *Id.* at 96. *Pennsylvania Fire*, in other words, holds that the appointment of an agent for service of process will subject a foreign insurer to general personal jurisdiction in the forum *if* the governing state statute so provides.

Later Supreme Court cases reinforce this rule. Just three years later, in *Chipman, Ltd. v. Thomas B. Jeffrey Co.*, 251 U.S. 373 (1920), the Court applied a similar analysis, albeit without citation to *Pennsylvania Fire*. The Court in *Chipman* held that a New York statute requiring foreign corporations to designate an in-state person for service of process only extended personal jurisdiction over the corporation to cases involving business the corporation conducted in New York. *Chipman*, 251 U.S. at 379. The Court rested its decision on the New York courts' interpretation of the statute, quoting a state court decision holding that " '[u]nless a foreign corporation is engaged in business within the state, it is not brought within the state by the presence of its agents.' " *Id.* (quoting *Tauza v. Susquehanna Coal Co.*, 115 N.E. 915, 917-18 (N.Y. 1917)). The Supreme Court thus held that there was no personal jurisdiction over a defendant corporation that, by the time of litigation, had ceased doing business in New York, even though the corporation had not yet revoked the designation of its agent for service of process. *Id.* at 379-80.

The Court faced a similar issue the following year. In *Robert Mitchell Furniture Co. v. Selden Breck Construction Co.*, 257 U.S. 213 (1921), the defendant corporation had at one

point conducted business in Ohio, "but its last work [there] was finished" roughly six months before suit was filed. *Id.* at 215. The corporation had maintained its ability to do business in Ohio—and therefore retained an agent for service of process in that state. *See id.* Nevertheless, citing to both *Pennsylvania Fire* and *Chipman*, the Court held that if "the long previous appointment of the agent is the only ground for imputing to the defendant an even technical presence," then "[u]nless the state law [requiring appointment of a statutory agent] either expressly or by local construction gives to the appointment a larger scope, we should not construe it to extend to suits in respect of business transacted by the foreign corporation elsewhere." *Id.* at 216.[4] Noting that "the Ohio Statutes, so far as they go, look to 'liability incurred within this State' " and that the state supreme court had not interpreted the statute more broadly, the Court held that service on the agent was defective. *Id.*

**[2]** *Robert Mitchell* thus confirms that federal courts should look first and foremost to a state's construction of its own statute to determine whether appointment of an agent for service of process is a sufficient basis for the exercise of personal jurisdiction over a foreign corporation. But *Robert Mitchell* does more than settle a dispute over the meaning of Ohio law. It also announces the default rule that, in the absence of broader statutory language or state court interpretations, the appointment of an agent for the service of process is, by itself, insufficient to subject foreign corporations to suits for business transacted elsewhere.

That principle played out eight years later in *Louisville & Nashville Railroad Co. v. Chatters*, 279 U.S. 320 (1929). The Court heard a dispute in which two out-of-state railway com-

---

[4]The Court grounded this common-sense interpretation in the fact that "[t]he purpose in requiring the appointment of such an agent is primarily to secure local jurisdiction in respect of business transacted *within the State*." *Robert Mitchell*, 247 U.S. at 215 (emphasis added).

panies designated agents in Louisiana "to receive service of process as required by a state law exacting formal consent by the corporation that any 'lawful process' served on the designated agent should be 'valid service' upon the corporation." *Id.* at 323-24. The Court held that jurisdiction was proper over a defendant on the ground that it was doing business in Louisiana. *See id.* at 326-29. Nevertheless, the Court noted that "[f]or present purposes we may assume that the effect of the designation of the statutory agent by the [railway company] is, *as the state decisions cited seem to show*, that a cause of action arising wholly outside and wholly unconnected with any act or business of the corporation within the state may not be sued upon there." *Id.* at 325 (emphasis added). As in *Robert Mitchell*, the Supreme Court looked to state decisions to determine the reach of personal jurisdiction in Louisiana.

Finally, in *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952), the Supreme Court clarified that it is the corporate activities of the defendant, not just the mere designation of a statutory agent, that is helpful in determining whether the court has personal jurisdiction over the defendant. In upholding an Ohio state court's exercise of jurisdiction over a non-resident corporation, the Court stated that "[t]he corporate activities of a foreign corporation which, under state statute, make it necessary for it to secure a license and to designate a statutory agent upon whom process may be served provide a helpful but not a conclusive test." *Id.* at 445. Whether the activities of a particular corporation "make it reasonable and just to subject the corporation to the jurisdiction of that state are to be determined in each case." *Id.* In short, the degree to which a defendant is present in the forum is an important factor in determining personal jurisdiction. The simple act of appointing a statutory agent is not, nor has it ever been, a magical jurisdictional litmus test.

**[3]** *Pennsylvania Fire*, *Chipman*, and *Robert Mitchell* thus collectively stand for the proposition that federal courts must, subject to federal constitutional restraints, look to state stat-

utes and case law in order to determine whether a foreign corporation is subject to personal jurisdiction in a given case because the corporation has appointed an agent for service of process.[5] *Perkins* suggests that the inquiry is particularly vital when the prospective defendant—unlike the railroads in *Louisville & Nashville Railroad Co.*—has done no more than explore the possibility of doing business in the forum state.[6]

We accordingly turn to the relevant Montana statutes and decisions.

---

[5]Several influential secondary sources adopt this principle. As the Restatement (Second) of Conflict of Laws puts it,

> [i]f a corporation has authorized an agent or a public official to accept service of process in actions brought against it in the state, the extent of the authority thereby conferred is a question of interpretation of the instrument in which the consent is expressed and of the statute, if any, in pursuance of which the consent is given. It is a question of interpretation whether the authority extends to all causes of action or is limited to causes of action arising from business done in the state . . . . By qualifying under one of these statutes, the corporation renders itself subject to whatever suits may be brought against it within the terms of the statutory consent *as interpreted by the local courts* provided that this interpretation is one that may fairly be drawn from the language of the enactment.

Restatement (Second) of Conflict of Laws § 44 cmt. c (1971) (emphasis added); *see also* 36 Am. Jur. 2d Foreign Corporations § 172 (2010) ("A corporation which engages in business in a state other than its state of incorporation is presumed to have accepted the conditions imposed by the laws of that state on the right of foreign corporations to do business therein and is bound by them accordingly, except insofar as they are subject to attack on constitutional grounds.").

[6]The dissent emphasizes that none of the later cases overruled *Pennsylvania Fire*. We agree. But the dissent's interpretation of *Pennsylvania Fire* cannot be squared either with the carefully circumscribed analysis in that case or with the Supreme Court's later decisions. The dissent implicitly recognizes as much by noting that, in *Robert Mitchell* and *Louisville*, the Court emphasized that it all depended on how broadly or narrowly the appointment was treated by the state itself." Dissent 1862 (citing *Louisville*, 279 U.S. at 329); *see also id.* (discussing *Robert Mitchell*). The dissent, however, fails to extend that principle to this case.

## II. The Montana Appointment Statute Does Not Confer Jurisdiction Over the Companies for Business Done Outside Montana

### A. The Governing Statute

[4] Title 33 of the Montana Code regulates insurance companies. Pursuant to § 33-2-101, a foreign corporation that seeks to transact business in Montana must obtain a certificate of authority.[7] As part of the application process to obtain this certificate, the insurer must "appoint the commissioner [of insurance] as its attorney to receive service of legal process issued against it in Montana" and file with the commissioner the name and address to which the commissioner should forward any summons or complaint received against the insurer. Mont. Code Ann. § 33-1-601. The appointment of this agent is "irrevocable, binds the insurer and any successor in interest or to the assets or liabilities of the insurer, and remains in effect as long as there is in force in Montana any contract made by the insurer or obligations arising from a contract." *Id.* The plain language of the statute therefore does not answer the question of whether the appointment subjects the Companies to suit in Montana for business conducted elsewhere.

### B. Montana's Interpretation of Its Statutory Scheme

The Supreme Court of Montana has not specifically determined the effect of § 33-1-601 on personal jurisdiction over foreign defendants. Nonetheless, in *Reed v. Woodmen of the World*, 22 P.2d 819 (Mont. 1933), the state supreme court construed an earlier, similar statute that also required foreign

---

[7]Montana law specifies that no certificate of authority is required to issue a policy to subjects "not resident, located, or expressly to be performed in Montana at time of issuance, and which coverage was lawfully solicited, written, and delivered outside Montana." Mont. Code Ann. § 33-2-102 (2010).

corporations to "maintain an agent within the state upon whom service of process may be made." *Id.* at 822. Specifically, the statute provided that the corporation "shall agree that any lawful process against it which is served upon such attorney shall be of the same legal force and validity as if served upon the society, and that the authority shall continue in force so long as any liability remains outstanding in this state." Mont. Code Ann. § 6322 (1921). Although "liability . . . outstanding in this state" could be read quite broadly, the Montana Supreme Court restricted the reach of the statute, stating that "[t]he object of statutes of this nature is to provide for the collection of debts due from foreign corporations from its citizens and to enforce the *contracts made here* by foreign corporations though its agents." *Reed*, 22 P.2d at 822 (emphasis added).[8]

[5] *Reed* counsels that Montana's statutory scheme governing the appointment of an agent for the service of process was not meant to initiate a jurisdictional free-for-all by expanding personal jurisdiction to companies that have not transacted any business in Montana. To the extent that *Reed* is not dispositive, the default rule in *Robert Mitchell* applies—"we should not construe [the state statute] to extend to suits in respect of business transacted by the foreign corporation" outside Montana. *Robert Mitchell*, 257 U.S. at 216. Thus, under either *Reed* or *Robert Mitchell*, the appointment of an agent for the service of process in Montana does not confer personal jurisdiction over the Companies.

We note that the Kings' insurance policies provide coverage for any accident that occurs anywhere in the United States. This scope of coverage does not, however, mean that the Kings may hale the Companies into any court in this nation, *see, e.g.*, *Carter v. Miss. Farm Bureau Cas. Ins. Co.*,

---

[8]This principle is not a startling one; *Reed* puts Montana law in the company of the Ohio and New York laws discussed in *Chipman* and *Robert Mitchell*.

109 P.3d 735, 739 (Mont. 2005) ("[I]t is important to emphasize that this appeal is not about whether Carter and Schmidt are covered by Carter's [insurance] policy; rather, the question is whether or not they can *litigate the coverage dispute in Montana*."), and it does not support the exercise of personal jurisdiction over the Companies. The Montana statute does not say that personal jurisdiction is proper so long as a contract is in force in Montana. Rather, it says that the appointment of an agent for service of process is effective as long as that condition holds. And, as *Reed* and *Robert Mitchell* illustrate, there is an important difference between the appointment of an agent and the extension of wide-ranging personal jurisdiction over a corporation. In other words, this case is not about whether an insurance policy might cover an incident in Montana but whether there is an insurance contract or insurance business conducted in Montana.

**[6]** In sum, the Montana law regarding appointment of an agent for service of process does not, standing alone, subject foreign corporations to jurisdiction in Montana for acts performed outside of Montana, at least when the corporations transact no business in the state. Here, the Companies merely contemplated doing business in Montana; they are not amenable to suit in that state simply because they appointed the Commissioner of Insurance as their agent for service of process.

### III.   PERSONAL JURISDICTION UNDER MONTANA'S LONG-ARM STATUTE

Because § 33-1-601 does not confer jurisdiction over the Companies, we consider whether the district court had jurisdiction over the Companies under other theories of general or specific personal jurisdiction.

"Where, as here, there is no applicable federal statute governing personal jurisdiction, the district court applies the law of the state in which the district court sits." *Yahoo! Inc. v. La*

*Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1205 (9th Cir. 2006). We have recognized that Montana Rule of Civil Procedure 4B(1), which serves as the state's long-arm statute, "permit[s] the exercise of personal jurisdiction over nonresident defendants to the maximum extent permitted by federal due process."[9] *Davis v. Am. Family Mut. Ins. Co.*, 861 F.2d 1159, 1161 (9th Cir. 1988). As a result, "the jurisdictional analyses under state law and federal due process are the same." *Yahoo!*, 433 F.3d at 1205.

---

[9]Montana Rule of Civil Procedure 4B(1) provides as follows:

> All persons found within the state of Montana are subject to the jurisdiction of the courts of this state. In addition, any person is subject to the jurisdiction of the courts of this state as to any claim for relief arising from the doing personally, through an employee, or through an agent, of any of the following acts:

> (a) the transaction of any business within this state;

> (b) the commission of any act which results in accrual within this state of a tort action;

> (c) the ownership, use or possession of any property, or of any interest therein, situated within this state;

> (d) contracting to insure any person, property or risk located within this state at the time of contracting;

> (e) entering into a contract for services to be rendered or for materials to be furnished in this state by such person; or

> (f) acting as director, manager, trustee, or other officer of any corporation organized under the laws of, or having its principal place of business within this state, or as personal representative of any estate within this state.

Mont. R. Civ. P. 4B(1). The Montana Supreme Court has explained that "[t]he first sentence of Rule 4B(1) . . . states the requirements for general jurisdiction. The remainder of Rule 4B(1) . . . states the requirements for specific long-arm jurisdiction." *Cimmaron Corp. v. Smith*, 67 P.3d 258, 260 (Mont. 2003).

### A. THE COMPANIES ARE NOT SUBJECT TO GENERAL PERSONAL JURISDICTION IN MONTANA

**[7]** The exercise of general personal jurisdiction allows courts to hear any cases involving a particular defendant. However, "[t]he standard for general jurisdiction is high . . . . [A] defendant must not only step through the door, it must also '[sit] down and [make] itself at home.' " *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1169 (9th Cir. 2006) (internal citation omitted) (quoting *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1125 (9th Cir. 2002)). The standard is met only by "continuous corporate operations within a state [that are] thought so substantial and of such a nature as to justify suit against [the defendant] on causes of action arising from dealings entirely distinct from those activities." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945); *accord Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984) (holding that if a defendant's contacts with a state are "continuous and systematic," it may be haled into court in that state in any action). For general jurisdiction to obtain, the defendant's contacts must approximate physical presence in the forum. *See Yahoo!*, 433 F.3d at 1205.

**[8]** The Companies' contacts in Montana do not come close to meeting this standard. The Companies have no offices or employees in Montana, have made no sales in Montana, have solicited no business in Montana, and are unable to issue or sell insurance in the state. In fact, the Companies' sole contacts with Montana are their initial Certificates of Authorization and their appointments of the Insurance Commissioner as an agent for service of process. These contacts hardly approximate physical presence and are not "continuous and systematic." American Family has not set up a "home" in Montana. Accordingly, the court cannot exercise general personal jurisdiction over the Companies.

### B. The Companies Are Not Subject to Specific Personal Jurisdiction in this Case

We employ a familiar three-prong test to evaluate whether a party has sufficient minimum contacts to be susceptible to specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010). "If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law." *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995).

[9] Under the first prong, the Montana Supreme Court has previously considered whether Montana courts have specific personal jurisdiction over an insurer that, like the Companies, "has no offices or agents in Montana, does not advertise [t]here, and is not authorized to conduct business in Montana as a foreign insurer." *Carter*, 109 P.3d at 738. The court held that, even though the accident triggering coverage under a nationwide insurance policy took place in Montana, "there was no basis for a finding of jurisdiction under" the state

long-arm statute. *Id.* at 742. *Carter* thus precludes the exercise of specific personal jurisdiction over the Companies under Rule 4B(1).[10]

## CONCLUSION

The Companies have dipped their toes in Montana to test the waters for doing business, but their actions do not amount to a foot planted in the state for purposes of personal jurisdiction. Under Montana law, the Companies' acts of beginning the process of applying to do business and appointing an agent for service of process provide an insufficient basis for the exercise of personal jurisdiction.

**AFFIRMED.**

---

FERNANDEZ, Circuit Judge, dissenting:

Timothy King[1] appeals the district court's dismissal for lack of personal jurisdiction of his action against American Family Mutual Insurance Company and American Standard Insurance Company of Wisconsin (collectively "the Companies"). The majority agrees with the district court; I do not. Thus, I respectfully dissent.

---

[10]Our decision in *Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911 (9th Cir. 1990), is not to the contrary. Although we held in *Farmers* that a foreign insurer could be subjected to personal jurisdiction in Montana, *Farmers* was an indemnity dispute. As a result, *Farmers* was "a case in which a company's insured is sued as a result of a car accident in a foreign state," "arguably [giving rise to] an obligation to appear and defend the driver," while this is a case, like *Carter*, in which "the insured is suing its . . . insurer in a foreign state for breach of contract." *Carter*, 109 P.3d at 741.

[1]Gwynne King, Timothy King's wife, was dismissed as a party to this appeal on June 1, 2009, subsequent to the filing of the opening brief.

The sole question before us is whether the district court has personal jurisdiction over the Companies. In answering that question, I will first refine what I see as the nature of the Companies' connection to Montana and will then determine the personal jurisdiction questions.

Under Montana law, if a company wishes to sell insurance in the state, it must obtain a certificate of authority. *See* Mont. Code Ann. § 33-1-312(2). In order to obtain the certificate the company "shall appoint the [Commissioner of Insurance of the State of Montana] as its attorney to receive service of legal process issued against it in Montana." Mont. Code Ann. § 33-1-601(1). The Companies did just that,[2] and their certificates of authority were duly issued. Each certificate by its terms provides that it "shall continue in force as long as the Company is entitled thereto under the laws of the State of Montana and until suspended or revoked or otherwise terminated." Neither certificate has been terminated; indeed, the Companies acknowledge that they have paid the necessary fees to maintain the certificates because, as they put it, they wish to "preserve the level of progress made on their approval" and want to preserve their business names in Montana. Were it not for the Appointments, even that could not be accomplished.

The Companies point out, however, that they have no officers or employees in Montana, do not advertise or solicit business in Montana, and have not yet issued policies or collected premiums in Montana. In fact, they cannot actually issue poli-

---

[2]Each filed an "Appointment of Attorney to Accept Service of Process," which stated that the company "does hereby make, constitute and appoint JOHN MORRISON, DULY ELECTED STATE AUDITOR AND COMMISSIONER OF INSURANCE OF THE STATE OF MONTANA, AND HIS SUCCESSORS IN OFFICE, to be its true and lawful Attorney upon whom all legal process in any action or proceeding [may be served], . . . and does consent and agree that any lawful process against it which is served upon said Attorney shall be of the same legal force and validity as if served upon the said company . . . ." (Hereafter, "the Appointment.")

cies in Montana until they also submit their policy forms, their rate schedules and a list of their agents who would sell policies in Montana. Nevertheless, the Appointments are still on file and their certificates are still valid.

I am mindful of the provision of the Montana Code which states that: "The appointment is irrevocable, binds the insurer and any successor in interest or to the assets or liabilities of the insurer, and remains in effect as long as there is in force in Montana any contract made by the insurer or obligations arising from a contract." Mont. Code Ann. § 33-1-601(1). The Appointment itself contains similar language. As I see it, that is effective to cover this case, even if the Companies have not yet issued policies in Montana. In the first place, the Appointments here must be in effect; otherwise the certificates of authority would not be in force, and the Companies have made sure that the certificates remain in force. The Companies' failure to submit other documents does not obnebulate that fact. Secondly, there can be no doubt that transitory contracts between the Companies and King exist; and the contracts themselves indicate that they insure King throughout the United States. It would be bizarre to decide that the contracts are not in force (effective) in Montana simply because the Companies do not do any business there. While the Montana Supreme Court has not specifically so stated, I am satisfied that, if asked, it would declare that the contracts are in force in that state, even if the policies on which they are based were not issued there.[3] That being the case, I would so determine at this time. *See Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1203 (9th Cir. 2002). Moreover, unlike a situation

---

[3]*Cf. Carter v. Miss. Farm Bureau Cas. Ins. Co.*, 109 P.3d 735, 740 (Mont. 2005) (In a first party case (the one at hand is a first party case) where no authorization for service of process existed, the mere fact of a policy's national coverage would not confer personal jurisdiction on the Montana courts.) Note, however, that in a third party case, even the lack of an authorization would not preclude personal jurisdiction. *See Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.*, 907 F.2d 911, 913-914 (9th Cir. 1990).

where an insurance company had no contacts with Montana, and could not reasonably foresee being hailed into a Montana court,[4] here the Companies had obtained and retained certificates of authority by, among other things, filing the Appointments. They should have foreseen the possibility of having to appear and litigate in the Montana courts.[5]

Therefore, I would hold that the Appointments do apply to this action. What remains is the question of whether they conferred personal jurisdiction upon the Montana courts.

We have held that the law of Montana permits "the exercise of personal jurisdiction over nonresident defendants to the maximum extent permitted by federal due process." *Davis v. Am. Family Mut. Ins. Co.*, 861 F.2d 1159, 1161 (9th Cir. 1988). "Where the state and federal limits are coextensive, we must determine whether the exercise of jurisdiction comports with federal constitutional principles of due process." *Id.* at 1161. Here, the taking of personal jurisdiction in this instance does comport with due process.

Over ninety years ago, the Supreme Court decided a case with facts very similar to the case before us. *See Pa. Fire Ins. Co. of Phila. v. Gold Issue Mining & Milling Co.*, 243 U.S. 93, 37 S. Ct. 344, 61 L. Ed. 610 (1917). There a Pennsylvania insurance company had issued a policy of insurance in Colorado to an Arizona corporation "insuring buildings in Colorado." *Id.* at 94, 37 S. Ct. at 345. The "insurance company had obtained a license to do business" in Missouri, and had "filed with the superintendent of the insurance department a power

---

[4]*See Carter*, 109 P.3d at 741.

[5]I express no opinion about where the dispute between King and the Companies can be said to have arisen; that was not before the district court and it is not before us. Of course, the dispute is closely related to the accident in Montana and, on that account, the Companies were joined in the action against the other motorist and her insurer. After removal, the others, apparently, settled and the matter was dismissed as to them.

of attorney" for service of process, as required by statute. *Id.* The insurance company asserted that the power of attorney could only apply to contracts issued in Missouri and that if it extended further, due process would be violated. *See id.* at 94-95, 37 S. Ct. at 345. The Court had little difficulty in rejecting that proposition. As it said:

> The construction of the Missouri statute thus adopted hardly leaves a constitutional question open. The defendant had executed a power of attorney that made service on the superintendent the equivalent of personal service. If by a corporate vote it had accepted service in this specific case, there would be no doubt of the jurisdiction of the state court over a transitory action of contract. If it had appointed an agent authorized in terms to receive service in such cases, there would be equally little doubt. It did appoint an agent in language that rationally might be held to go to that length. The language has been held to go to that length, and the construction did not deprive the defendant of due process of law even if it took the defendant by surprise, which we have no warrant to assert.

*Id.* at 95, 37 S. Ct. at 345 (citations omitted). That determination appears dispositive here.

However, the Companies point out that the Supreme Court has issued a number of opinions since *Pennsylvania Fire*, which adopt a flexible approach to personal jurisdiction issues. *See, e.g.*, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-16, 104 S. Ct. 1868, 1872-73, 80 L. Ed. 2d 404 (1984); *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 445-47, 72 S. Ct. 413, 418-19, 96 L. Ed. 485 (1952); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316-19, 66 S. Ct. 154, 158-60, 90 L. Ed. 95 (1945); *see also Bendix Autolite Corp. v. Midwesco Enters., Inc.*, 486 U.S. 888, 891-92, 108 S. Ct. 2218, 2221, 100 L. Ed. 2d 896 (1988). No

doubt what the Companies say is true, but it makes no difference here.

In the first place, the Court has never revisited *Pennsylvania Fire*, nor has it stated that its holding is no longer viable. The contrary is so. For example, in a case decided a few years after *Pennsylvania Fire*, the Court cited that case and noted that a corporation which appoints an agent for service of process in a state will find itself bound by the scope the state gives to the statute which governs that document. *See Robert Mitchell Furniture Co. v. Selden Breck Constr. Co.*, 257 U.S. 213, 215-16, 42 S. Ct. 84, 85, 66 L. Ed. 201 (1921). As it was, that case involved business transacted elsewhere, and the state in question seemed to limit the scope of its statute to liability incurred within the state itself. *Id.* at 216, 42 S. Ct. at 85. Later on the Court, again with citation of *Pennsylvania Fire*, noted that the appointment of an agent "operates as a consent" when an "obligation [is] incurred within the state although the breach occurred without." *Louisville & N.R. Co. v. Chatters*, 279 U.S. 320, 329, 49 S. Ct. 329, 332, 73 L. Ed. 711 (1929). Again, the Court emphasized that it all depended on how broadly or narrowly the appointment was treated by the state itself. *Id.* And in *International Shoe*, 326 U.S. at 317, 66 S. Ct. at 159, the Court made it apparent that it was discussing situations where "no consent to be sued or authorization to an agent to accept service of process has been given." As a final example, it is interesting to consider *Perkins*, 342 U.S. at 445-47, 72 S. Ct. at 418-19, where the Court noted that due process did not prohibit a state from opening or compel it to open its courts to in personam jurisdiction over actions that did not arise out of a corporation's activities in the state, and alluded to the appointment of an agent for service of process as one possible method of conferring jurisdiction. In so doing, the Court cited to *Pennsylvania Fire*. *Id.* at 446 n.6, 72 S. Ct. at 418-19 n.6. Not so much as an example but as a matter of interest, I should also say a bit about *Bendix Autolite*, 486 U.S. at 891-93, 108 S. Ct. at 2220-21, not for what it did say, but for what it did not say. There, the Court opined on an

Ohio statute that required foreign corporations to designate an agent for service of process, which would subject the corporation to the jurisdiction of the state courts, or else suffer the loss of the benefit of statutes of limitations. *Id.* The Court did not indicate that appointment of an agent for service of process simply could not accomplish the state's goal; it held, instead, that the confluence of the agent requirement and the other state laws violated the Commerce Clause. *Id.* In other words, *Pennsylvania Fire* remains applicable to the case at hand, despite any susurrant or even plangent suggestions that the principles behind it are not as strong as they once were.

Secondly, as the Eighth Circuit Court of Appeals has pointed out, in the cases after *International Shoe*, the issues involved are rather different from those involved in *Pennsylvania Fire*. *See Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196 (8th Cir. 1990). In that case, there was an automobile accident in Iowa involving Knowlton and a van operated by an Iowa corporation which acted as an agent for Allied, a Delaware corporation with its principal place of business in Illinois, but which did business in Minnesota and had appointed an agent for service of process there. *Id.* at 1197-98. Knowlton sued Allied in the United States District Court in Minnesota. The court of appeals determined that there was personal jurisdiction over Allied in Minnesota. It reasoned as follows:

> Plaintiff in this case claims that Allied's business activities in Minnesota are so pervasive that jurisdiction exists even as to claims, such as this one, that are not related to those activities. Because we hold that there is jurisdiction based on consent, we find it unnecessary to pursue this aspect of the analysis.
>
> Consent is the other traditional basis of jurisdiction, existing independently of long-arm statutes. Personal jurisdiction, unlike subject-matter jurisdiction, is primarily concerned with fairness to individual parties. Objections to jurisdiction over the person

> may be waived, either expressly or by not asserting them in a timely manner. A defendant may voluntarily consent or submit to the jurisdiction of a court which otherwise would not have jurisdiction over it. One of the most solidly established ways of giving such consent is to designate an agent for service of process within the State.

*Id.* at 1199 (citation omitted). This, of course, supports the continuing viability of *Pennsylvania Fire*.

The Supreme Court of Delaware has reached the same conclusion, and it has specifically declared that the later Supreme Court decisions are "entirely consistent with the continued viability of its earlier holding in [*Pennsylvania Fire*]." *Sternberg v. O'Neil*, 550 A.2d 1105, 1113 (Del. 1988). It did so because it saw *Pennsylvania Fire* as a kind of express consent case.[6] *Id.* at 1111.

In short, even if the principles behind *Pennsylvania Fire* have been somewhat weakened, it is not for us to determine that *Pennsylvania Fire* is a valetudinarian case and must be absterged from the law of personal jurisdiction. As the Supreme Court has recently reminded the Courts of Appeals: "[I]f the 'precedent of this Court has direct application to a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.'" *Tenet v. Doe*, 544 U.S. 1, 10-11, 125 S. Ct. 1230, 1237, 161 L. Ed. 2d 82 (2005); *see also State Oil Co. v. Khan*, 522 U.S. 3, 20, 118 S. Ct. 275, 284, 139 L. Ed. 2d 199 (1997); *Agostini v. Felton*, 521 U.S. 203, 237, 117 S. Ct. 1997, 2017, 138 L. Ed. 2d 391 (1997); *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490

---

[6]In a different context, we have declared that voluntary consent will suffice to confer personal jurisdiction. *See SEC v. Blazon Corp.*, 609 F.2d 960, 965 (9th Cir. 1979).

U.S. 477, 484, 109 S. Ct. 1917, 1921-22, 104 L. Ed. 2d 526 (1989). Therefore, as far as the present record shows, the district court did have personal jurisdiction over the Companies.

I would reverse the district court's order dismissing the action against the Companies for lack of personal jurisdiction and remand for further proceedings. Thus, I respectfully dissent.